J-A14015-16

2016 PA Super 282

| | | |
|---|---|---|
| TRUE RAILROAD ASSOCIATES, L.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| AMES TRUE TEMPER, INC. | : | |
| Appellee | : | No. 1000 MDA 2015 |

Appeal from the Order Entered May 14, 2015
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2011-08463
2014-00020

| | | |
|---|---|---|
| TRUE RAILROAD ASSOCIATES, L.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| AMES TRUE TEMPER, INC. | : | |
| Appellee | : | No. 1001 MDA 2015 |

Appeal from the Order Entered May 14, 2015
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2011-08463
2014-00020

| | | |
|---|---|---|
| TRUE RAILROAD ASSOCIATES, L.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| AMES TRUE TEMPER, INC. | : | |
| Appellee | : | No. 1311 MDA 2015 |

Appeal from the Order Entered July 22, 2015
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2011-08463

| | |
|---|---|
| TRUE RAILROAD ASSOCIATES, L.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AMES TRUE TEMPER, INC. | |
| Appellee | No. 1312 MDA 2015 |

Appeal from the Order Entered May 14, 2015
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2011-08463

| | |
|---|---|
| TRUE RAILROAD ASSOCIATES, L.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AMES TRUE TEMPER, INC. | |
| Appellee | No. 1448 MDA 2015 |

Appeal from the Order Entered August 12, 2015
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2014-00020

BEFORE:  BOWES, OTT AND PLATT,* JJ.

---

* Retired Senior Judge assigned to the Superior Court.

- 2 -

OPINION BY BOWES, J.:                    **FILED DECEMBER 13, 2016**

True Railroad Associates, L.P. ("True Railroad") filed five appeals from various orders entered in these declaratory judgment actions wherein the trial court upheld the exercise of an option. We quash the appeals filed at docket numbers 1000 MDA 2015, 1001 MDA 2015, and 1312 MDA 2015. We affirm the orders appealed at docket numbers 1311 MDA 2015 and 1448 MDA 2015.

On November 10, 2011, True Railroad instituted an action at docket number 2011-08463 against Ames True Temper, Inc. ("Ames") asking that the court declare Ames' attempt to exercise an option invalid. The pertinent facts with respect to the 2011 action are as follows. Ames is the successor-in-interest to True Temper Hardware Company ("True Temper"). On November 30, 1994, True Temper and True Railroad entered into a document titled Amended and Restated Lease Between True Railroad Associates, L.P., as Landlord, and True Temper Hardware Company, as Tenant, Dated November 30, 1994 (the "Lease"). Therein, True Railroad leased approximately 44 acres of land that it owned in Hampden Township, Cumberland County, to True Temper.

Article 42, which spanned eleven pages of the Lease, outlined the terms and conditions of a purchase option. The Lease provided, "Landlord hereby gives and grants to Tenant the exclusive right and option ('Purchase Option') to purchase" the leased premises "on the terms and conditions

- 3 -

hereinafter set forth." Lease at Art. 42(a). The tenant was granted the right to "exercise the Purchase Option at any time during the period commencing on January 1, 2011, and ending at midnight on October 31, 2011 (the 'Option Period')." *Id.* at 42(b). Under the Lease, the Purchase Option was exercised if the tenant gave True Railroad written notice of its intent to exercise the option during the Option Period so long as the tenant had cured any event of default of which it had been notified. *Id*. at 42(c) (emphasis added) ("Provided Landlord has not then notified Tenant of an Event of Default which remains uncured, Tenant may exercise the Purchase Option at any time during the Option Period by giving to Landlord a **written notice** to that effect."). Events of default were defined in another article of the Lease.

Article 42 continued that the purchase price for the leased premises under the Purchase Option was the greater of $6.7 million dollars, with reductions not here relevant, or the market value of the leased premises less the market value of space constructed by the tenant. The term market value was specifically defined as fair market value. The determination of fair market value was to be submitted to "two (2) independent appraisers within ten (10) days after the end of the Option Period." *Id*. at 42(d). The tenant and landlord were each accorded the right to select an appraiser.

The Lease further provided that, if "the higher appraisal [was] one hundred and ten (110%) percent or more of the lower appraisal, the two appraisers shall be instructed to select a third appraiser to determine the

- 4 -

'Market Value' in the manner specified above." *Id.* In the event that the two independent appraisers were "unable to agree upon the choice of the third appraiser, then the third appraiser shall be appointed by the president judge of the Court of Common Pleas of Cumberland County, Pennsylvania." *Id.* The parties were to be "conclusively bound by the third appraiser's determination of 'Market Value.'" *Id.*[1]

The Lease was amended on October 22, 2010. The October 22, 2010 amendment indicated that Ames had exercised its right to renew the lease and extend its terms and conditions through April 30, 2020. At that time, True Railroad tendered to Ames $250,000, which Ames had to utilize to improve, maintain or repair the building then located on the leased premises. The October 20, 2010 amendment re-set the rent during the renewal term. The Lease and amendment expressly provided that rent was $116,666.66 a month from May 1, 2012, through April 30, 2017, and it increased thereafter. Section five of the amendment contained an affirmation that the terms of the Lease were otherwise intact. Amendment

_____

[1] The parties' respective appraisals differed by 110%, and the president judge of the Court of Common Pleas of Cumberland County eventually did appoint a third appraiser: Steven W. Barrett, SRPA, SRA. Mr. Barrett appraised the property in question at $11,825,000 under a sales comparison approach and at $11,925,000 using an income approach. Closing on the property occurred after the present appeals were filed. However, this fact does not, contrary to Ames' position, moot the present appeals. Ames can always be ordered to re-convey the property to True Railroad.

to Lease, 10/22/10, at § 5 ("in all other respects, the Lease is hereby ratified and confirmed.").

Accordingly, the Lease's Purchase Option remained intact under the amendment, and the period for exercise of that option was set to commence on January 1, 2011, about two and one-half months after execution of the October 22, 2010 amendment. Accordingly, the October 22, 2010 amendment provided for the return of the $250,000 advanced by True Railroad for improvements to the property if Ames exercised the Purchase Option. That obligation was outlined as follows: "If Ames **exercises** the Purchase Option set forth in Article 42 of the Lease, the $250,000 paid to Ames pursuant to this Amendment shall be paid to True [Railroad]. Payment shall be made upon **execution** of the Purchase Option." Lease Amendment, 10/22/10, at 3 (emphases added).

On October 26, 2011, Ames sent True Railroad written notice that was exercising the Purchase Option. On November 9, 2011, True Railroad responded to the October 26, 2011 written notice. In the November 9, 2011 letter, True Railroad informed Ames that it did not intend to honor the exercise of Ames' option. Its position was that, under the October 22, 2010 lease amendment, the $250,000 had to be tendered concurrently with the written notice of Ames' intent to exercise the Purchase Option, *i.e.*, when the Purchase Option was exercised rather than when the Purchase Option was executed, as set forth in the written amendment. The November 9, 2011

letter informed Ames that Ames' exercise of the Purchase Option was invalid because Ames failed to forward the $250,000 within the Option Period. True Railroad also took the position that the Purchase Option had expired and that Ames could no longer exercise it.

On November 10, 2011, Ames responded to the November 9, 2011 letter sent by True Railroad. Ames' position was that it had properly exercised its Purchase Option under the October 22, 2010 amendment for the following reasons. The language in the October 22, 2010 amendment provided that the $250,000 was due "upon execution" of the Purchase Option. Ames contrasted the word "execution" with the term "exercise," which was used at the beginning of the clause contained in the October 22, 2010 amendment. Ames informed True Railroad that "upon execution" clearly meant that the $250,000 was due when the option was actually executed, *i.e.*, at the closing when the property was purchased.

Ames noted that, not only did the language of the October 22, 2010 amendment support its position, the nature of the $250,000 bolstered Ames' interpretation of the October 20, 2010 amendment. Specifically, Ames noted that the $250,000 amounted to a reimbursement to True Railroad for improvements to the real estate rather than a down payment on the purchase price for the leased property. Ames reasoned that, since the $250,000 was not an advance payment of part of the purchase price and

was, instead, a reimbursement, it did not have to be paid until the purchase of the property was consummated.

Despite its interpretation of terms of the October 20, 2010 amendment, Ames tendered the $250,000 with its November 10, 2011 response to True Railroad's November 9, 2011 letter. True Railroad refused that tender, and instituted the declaratory judgment action at 2011-08463. In that action, it sought a single declaration, which was that the Purchase Option outlined in the Lease was lapsed, void, and had not been validly exercised during the Option Period because Ames did not tender $250,000 with its October 26, 2011 written notification that it was exercising its Purchase Option.

Ames thereafter sent to True Railroad a notice of default, wherein it maintained that True Railroad was in default of Lease because it had failed to select an independent appraiser to determine the market value of the leased premises, as required by Article 42(d) of that document. Ames also filed an answer, new matter, and counterclaim in the 2011 lawsuit. In its counterclaim, Ames asked that True Railroad be held in material breach of the Lease and its October 20, 2010 amendment due to True Railroad's refusal to honor Ames' proper exercise of its Purchase Option and to accept the $250,000 within the period for cure set forth in the Lease. Ames also sought attorneys' fees under Article 38 of the Lease, which is outlined *infra* in connection with our discussion of the trial court's award of attorneys' fees.

True Railroad responded to the counterclaim, and Ames and True Railroad thereafter filed cross-motions for judgment on the pleadings as to the allegations contained in True Railroad's complaint, *i.e.*, whether Ames had properly exercised its option within the Option Period. The parties presented the court with their respective positions as to whether the October 22, 2010 amendment required the $250,000 to be tendered upon exercise of the Purchase Option or upon execution of the Purchase Option. Ames additionally asserted that it had cured any default in its exercise of the Purchase Option by tendering the $250,000 within one day of when True Railroad sent its November 9, 2011 letter notifying Ames that it was in breach of the terms of the Purchase Option, as modified by the October 20, 2000 amendment. **See** Lease at Art. 42(i).[2]

---

[2] That provision of the Lease provides:

> (i) Defaults and Remedies. If either party should fail to perform any of its obligations under this Article 41 after the exercise of the Purchase Option and before the Closing within the applicable time period specified herein, or if no such time period has been so specified, **within seven (7) days after the other party has given to the defaulting party written notice of such event**, then the other party shall have the right, at its option and without further notice, to exercise and enforce any one or more of the following rights and remedies: (i) to the extent permitted by law, it may sue for specific performance; (ii) it may terminate the agreement of purchase and sale which resulted from the exercise of the Purchase Option by giving to the defaulting party written notice of such termination; (iii) it may sue for damages resulting from the breach; or (iv) it may

*(Footnote Continued Next Page)*

In resolving the request for judgment in Ames' favor as to the allegations in True Railroad's complaint, the trial court noted that True Railroad was essentially taking the position that "exercise" of the option and "execution" of the option were synonymous, even though those terms were distinct in the amendment. The court observed that the amendment clearly stated that if Ames "exercised" its option, it had to tender the $250,000 when that option was "executed." The trial court concluded that, under the explicit language of the October 22, 2010 amendment, Ames did not have to tender the $250,000 when it exercised the Purchase Option and, instead, that amount could be tendered when the Purchase Option was executed at the closing on the purchase of the leased premises. It ruled that the October 22, 2010 amendment was unambiguous and did not require tender of the $250,000 with the written notice that Ames intended to exercise the Purchase Option.

In accepting Ames' construction of the terms of the October 22, 2010 amendment, the court further observed that the $250,000 was a reimbursement rather than a down payment to be credited against the purchase price of the property. The trial court ruled that the nature of the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> exercise and enforce any other right or remedy afforded to it by law or equity.

Lease, 11/30/1994, at ¶ 42(i).

$250,000 supported its ruling that the amount did not have to be forwarded to True Railroad until the property was sold. Accordingly, the trial court did not reach the question of whether Ames cured any default by tendering the $250,000 one day after being informed by True Railroad that it was in default of the terms of the Purchase Option.

On March 21, 2012, the trial court entered an order granting Ames' motion for a declaratory judgment that it had properly exercised the Purchase Option. In that order, the court rendered two findings: 1) "Defendant Ames True Temper, Inc. effectively exercised the Purchase Option pursuant to its notice of October 26, 2011;" and 2) "The Amendment to the Lease Agreement did not obligate Defendant Ames True Temper, Inc. to concurrently tender the $250,000 payment with its Notice of Purchase Option Exercise." Order of Court, 3/21/12, at 1. The effect of this order was to enter a declaration against True Railroad as to the allegations contained in its complaint.

True Railroad filed a motion for reconsideration of the March 21, 2012 order. Said motion was denied on April 11, 2012. Thereafter, True Railroad filed an appeal to this Court on May 7, 2012, seeking reversal of the March 21, 2012 order. On May 22, 2013, we quashed based upon a conclusion that the appeal was **untimely**. We held that the March 21, 2012 order was a final, appealable order and the denied motion for reconsideration did not operate to extend the appeal period. Consequently, the May 7, 2012 appeal

was untimely as to the March 21, 2012 order. *True R.R. Reality v. Ames True Temper*, 81 A.3d 1001 (Pa. Super. 2013) (unpublished memorandum).

In its petition for reargument to this Court, True Railroad erroneously claimed that we quashed the appeal because the March 21, 2012 order was interlocutory. It maintained that the March 21, 2012 order was a final, appealable order. We declined to grant reargument. In its petition for allowance of appeal, True Railroad again maintained that the March 21, 2012 order was a final, appealable order, and that our quashal was improper since it was premised upon the interlocutory nature of the March 21, 2012 order. Our Supreme Court denied review on December 30, 2013. *True R.R. Realty v. Ames True Temper, Inc.*, 83 A.3d 416 (Pa. 2013).

On January 2, 2014, True Railroad instituted a declaratory judgment action against Ames at docket number 2014-00020, wherein it sought a declaration that Ames had not validly exercised the Purchase Option for a different reason. The 2014 lawsuit concerned the following as delineated supra, under the above-outlined provisions of the Purchase Option, Ames was obligated to purchase the property at market value, which was defined as fair market value. The method for ascertaining fair market value required each party to select an independent appraiser. If the appraisals differed by 110%, then the two appraisers were to choose another appraiser. If the parties' respective appraisers could not agree on a third one, the president

judge of Cumberland County had to appoint an appraiser, whose judgment as to fair market value was binding on the two parties.

In the 2014 lawsuit, True Railroad averred that the appraiser that Ames selected was not independent since he and Ames had a pre-existing relationship and the appraiser had significantly undervalued the leased premises. True Railroad again sought a declaration that it did not have to honor Ames' exercise of the Purchase Option. True Railroad also asked that it be accorded the right to terminate the sales agreement that was executed due to Ames' exercise of the Purchase Option.

On April 9, 2014, the trial court *sua sponte* consolidated the 2011 and 2014 actions for trial. The following remained before the court: 1) Ames' counterclaim in the 2011 case seeking attorneys' fees and a finding that True Railroad was in default under the Lease; and 2) True Railroad's allegation in the 2014 lawsuit that it was absolved from responsibility from honoring the exercise of the Purchase Option since Ames did not select an independent appraiser.

After the cases were consolidated, True Railroad moved to vacate the March 21, 2012 order that had been previously appealed to this Court. In contrast to its earlier position taken during the appellate proceedings, True Railroad claimed that the March 21, 2012 order was actually interlocutory and thus could be reversed by the trial court. It submitted emails with its motion to vacate, claiming that those documents supported its interpretation

of the October 20, 2010 amendment. On May 14, 2015, the trial court denied the motion, concluding that the matter was *res judicata*. In that order, the trial court also indicated that the emails did not alter its conclusion that the amendment did not require Ames to tender the $250,000 when it exercised the option. On June 12, 2015, True Railroad filed separate appeals in the 2011 and 2014 lawsuits from the May 14, 2015 order. Those appeals were docketed at 1000 and 1001 MDA 2015.

The two cases proceeded to a non-jury trial on June 2 and 3, 2015. True Railroad submitted its evidence that Ames' appraiser was not independent. Ames took the position that True Railroad had not proven that its appraiser lacked independence. Additionally, Ames maintained that, even if the appraiser was not independent, that fact did not constitute a material breach of the terms of the Purchase Option since the Purchase Option permitted the parties to proceed to determine the sales price through an appraiser appointed by the court. At trial, Ames asked for rent that it paid to True Railroad from April 2012, which it asserted was when, if events had occurred as anticipated under the terms of Article 42 of the Lease, closing on the leased premises would have occurred. Ames also requested that the court rule in its favor regarding the attorneys' fees requested in its counterclaim in the 2011 lawsuit.

The trial court ordered briefs. On July 1, 2015, the trial court issued its verdict. It concluded that True Railroad had not met its burden of proof

that Ames' appraiser was not independent and denied True Railroad's request for a declaration at action number 2014-00020 that the Purchase Option and contract for sale of the realty were terminated. In the July 1, 2015 verdict, the court *sua sponte* terminated its consolidation of the two lawsuits. The Court entered a separate order on July 1, 2015, and awarded Ames a credit against the purchase price for the rent it paid to True Railroad from April 30, 2012, to June 30, 2014. In the second July 1, 2015 order, it also ruled, "Pursuant to the terms of the parties' agreement, Ames is entitled to attorneys' fees in the amount of $500,000.00, which shall be placed [in] escrow at the time of closing, which may be disbursed only upon further Order of Court." Order of Court (In re: Defendant's Petition for a Rule to Show Cause Why it's Pending Motion for Taxation for Attorneys' fees and Related Ancillary Relief should not be heard During the Dependency of Plaintiff's Appeal), 7/1/15, at 2. True Railroad filed the appeal docketed at number 1312 MDA 2015 from these July 1, 2015 orders.

True Railroad thereafter filed a motion for post-trial relief at both docket number 2011-8463 and at docket number 2014-00020. The post-trial motion filed in the 2011 case was denied on July 22, 2015, and the appeal docketed at number 1311 MDA 2015 followed.[3] On August 12, 2015,

---

[3] The appeals from the July 1, 2015 orders and the July 22, 2015 order denying post-trial relief in the 2011 case were both filed on July 30, 2015.

the trial court denied True Railroad's motion for post-trial relief at lower court action number 2014-00020, and True Railroad filed the appeal docketed at 1448 MDA 2015.

In these appeals, True Railroad raises the following issues:

1. Where a purchase option in a lease provides that the tenant can exercise the option only within a time limit, requires the tenant to pay $250,000 to the landlord upon "execution" of the option, and makes time of the essence, did the trial court commit legal error by:

> (A) entering partial judgment on the pleadings declaring that the tenant's purported exercise of the option was valid, notwithstanding the tenant's failure to make the $250,000 payment within the time limit for exercise of the option;
>
> and
>
> (B) later refusing to consider previously unproduced evidence showing that both parties intended "execution" to mean upon exercise of the option, because the landlord had not appealed the interlocutory partial judgment on the pleadings?

2. Where a contract for the sale of real property requires that the purchase price be determined by a process requiring each party to appoint an "independent" appraiser, and further provides that if either party fails to comply with that provision, the other party can terminate the contract, did the trial court commit legal error in deciding that the seller could not terminate the contract even though: (a) the purchaser appointed an appraiser with whom it had a preexisting professional relationship; (b) the appraiser had already appraised the property and at the time of appointment was part of a team working to help the purchaser obtain the best results in purchasing the specific property; and (c) the appraiser produced an appraisal that significantly undervalued the property?

3. Did the trial court commit legal error in awarding attorneys' fees and rent credit against the purchase price of the property, where the issues were not properly before the court, the parties did not include these remedies in their contract, and the law does not otherwise provide for such remedies?

Appellant's brief at 7-8.

Before we address the issues, we must address the propriety of these various appeals. In **Motorists Mutual Ins. Co. v. Pinkerton**, 830 A.2d 958 (Pa. 2003), our Supreme Court ruled that a party must file a post-trial motion if there is a trial in a declaratory judgment action and noted that an appeal lies after the motion for post-trial relief is denied. When an appeal is properly filed from the final order entered in a case, "any prior interlocutory order can be called into question." **Franciscus v. Sevdik**, 135 A.3d 1092, 1093 n. 1 (2016) (citing **K.H. v. J.R.,** 826 A.2d 863 (Pa. 2003)). Under **Pinkerton**, the final orders entered in these declaratory judgment actions were ones that denied post-trial relief. The appeals docketed at 1311 MDA 2015 and at 1448 MDA 2015 were from the final orders denying post-trial relief entered at lower court action numbers 2011-08463 and 2014-00020, respectively. The appeals filed prior to entry of those final orders are from interlocutory orders and will be quashed. However, we consider the merits of True Railroad's challenges to those interlocutory orders in connection with our resolution of the appeals from final orders.

The first issue on appeal challenges the propriety of the March 21, 2012 order entered in the 2011 declaratory judgment action. Both the trial court and Ames maintain that True Railroad cannot challenge the propriety

- 17 -

of the March 21, 2012 order in this appeal as the order was final and appealable when entered, and True Railroad failed to file a timely appeal from it. The trial court found, and Ames agrees, that the question of whether Ames properly exercised its option without tendering the $250,000 is *res judicata* and cannot be entertained in this appeal. True Railroad counters that the March 21, 2012 order was interlocutory and can now be appealed since a final order was not entered in the 2011 matter until its post-trial motion was denied.

We agree with Ames' position. In **Nationwide Mutual Ins. Co. v. Wickett**, 763 A.2d 813 (Pa. 2000), our Supreme Court examined a trial court's order sustaining preliminary objections and dismissing some, but not all, of the defendants in an action. The order in question was in the nature of a declaratory judgment, and our Supreme Court ruled that it was final and immediately appealable order under the Declaratory Judgment Act, which states that court declarations regarding the rights, status, and other legal relations of parties in an action "shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532. Thus, the order was considered final even though, following its entry, other claims and parties remained in the lawsuit.

This Court also addressed the issue in **Commerce Bank/Harrisburg, N.A. v. Kessler**, 46 A.3d 724 (Pa.Super. 2012), where, pursuant to a request for declaratory relief, the trial court had decided the priority of

certain liens against real estate prior to the sheriff's sale, and the losing litigant filed the appeal from the order assigning lien priority. "Under Pennsylvania law, the priority of liens recorded against foreclosed property is usually established by filing exceptions to the sheriff's schedule of distribution **after** a sheriff's sale has occurred," and "orders in foreclosure actions establishing lien priority are generally not final until **after** the sheriff's sale has occurred." **Id**. at 728 (emphasis in original; citations omitted). We noted that, "Given that there has yet to be a sheriff's sale of the subject property in this action, at first glance the trial court's . . . order appears to be interlocutory." **Id**.

In **Commerce Bank**, the appellant argued that, even though the sheriff's sale had not occurred, the order in question was immediately appealable since it resolved proceedings in the nature of a declaratory judgment on the lien priority issue, and the decision was therefore final and appealable. We agreed that, even though a final order had yet to be entered in the action, we could entertain the appeal. We observed that § 7532 of the Declaratory Judgment Act "expressly defines declaratory judgments as final orders," and that "our Courts have held that orders resolving declaratory judgments are immediately appealable." **Id**. We therefore accepted jurisdiction. **See also Penn-Am. Ins. Co. v. Peccadillos, Inc.,** 27 A.3d 259, 264 n. 2 (Pa.Super. 2011) (*en banc*) ("Because the trial court's order declared the rights of the parties and

disposed of all of the claims made by [the appellant] in its complaint for declaratory judgment, the order was immediately appealable.). Herein, the March 21, 2012 order disposed of all of True Railroad's claims made in its 2011 complaint for declaratory judgment, and, after entry of the order, True Railroad could no longer obtain declaratory relief. Therefore, the March 21, 2012 order was final.

The panel in True Railroad's prior appeal relied upon **Wickett** and **Commerce Bank** when it ruled that the March 21, 2012 order was a final order. Indeed, given this ruling, we must conclude that the law of the case doctrine applies. "This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." **Commonwealth v. Starr**, 664 A.2d 1236, 1331 (Pa. 1995) (citations omitted). The doctrine provides, in pertinent part, that "upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court." **Id**. The applicable legal precept is that "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." **Id**.

In the prior appeal, a panel held that the March 21, 2012 order was a final appealable order, and we cannot revisit that determination herein. **See Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.**,

98 A.3d 645 (Pa.Super. 2014) (*en banc*) (Superior Court could not examine merits of question decided by prior panel). Appellant's failure to timely appeal the March 21, 2012 order rendered it *res judicata* on the matter decided therein, *i.e.*, that Ames properly exercised its Purchase Option by sending notice within the Option Period, even though Ames did not tender the $250,000 with the written notice. **Gardner v. Consol. Rail Corp.,** 100 A.3d 280, 282–83 (2014) ("The failure to file a timely appeal from a final order results in that order becoming *res judicata* on the issue decided therein." (citing **In re Estate of Karschner**, 919 A.2d 252 (Pa.Super. 2007)).

In contrast to its position in the prior appeal, True Railroad now claims that the March 21, 2012 order was interlocutory since, when it was entered, there was still a pending counterclaim by Ames. True Railroad relies upon cases where a party filed a declaratory judgment action on several different bases and some, but not all, of their requests for declaratory judgment were denied. In such a scenario, the partial denial of declaratory relief will be considered interlocutory since the losing party still can obtain declaratory relief on the other pending claims.

For example, in **Pennsylvania Bankers Ass'n v. Pennsylvania Department of Banking**, 948 A.2d at 790 (Pa. 2008), plaintiff banks filed a complaint against the Pennsylvania Department of Banking asserting different theories for declaratory relief, including several constitutional

claims. The matter was within the original jurisdiction of the Commonwealth Court, which sustained the Department of Banking's preliminary objections in the nature of a demurrer with respect to some, but not all, of the banks' constitutional claims, and the banks took an appeal to our Supreme Court. That court quashed the appeal, distinguishing **Wickett**, as follows.

> The [b]anks . . . argue that the Commonwealth Court's order constitutes a final, appealable order pursuant to **Wickett**. We find **Wickett** distinguishable, however, for the following reasons. In **Wickett**, the trial court's order put certain defendants out of court by dismissing all of the plaintiff's claims against them. In so doing, the order prevented the plaintiffs from obtaining any relief against these parties. It would therefore be appropriate in this context to characterize the trial court's order as a final order under 42 Pa.C.S. § 7532 because it, in essence, declared that the plaintiffs did not have any viable theory of recovery against such defendants.

*Id*. at 799. Our Supreme Court held that the order in question was not appealable since the plaintiff-banks "might still be able to obtain the relief they are seeking—*i.e.* a declaration that § 517 of the Credit Union Code is unconstitutional—based on one of their alternative theories pending before the Commonwealth Court." *Id*. at 798. **See also United States Organizations for Bankr. Alternatives, Inc. v. Dep't of Banking,** 26 A.3d 474 (Pa. 2011) (order was interlocutory where it granted in part and denied in part plaintiff's declaratory action regarding constitutionality of a statute in that plaintiff could still be granted declaratory relief on remaining claims after the order was entered).

These cases are inapposite. True Railroad's complaint seeking declaratory relief was not granted in part and denied in part by the March 21, 2012 order. Rather, the order entered a declaration as to the entirety of the allegations in the 2011 complaint. Unlike the plaintiffs in the cases upon which it relies, True Railroad could no longer obtain declaratory relief after entry of the March 21, 2012 order. In the 2011 lawsuit, the sole declaration sought by True Railroad was that Ames did not validly exercise the Purchase Option since it did not tender the $250,000 with the October 26, 2011 notice. The trial court entered a declaratory judgment that the $250,000 did not have to be tendered with the written notice and that Ames properly exercised the Purchase Option. True Railroad was without any further basis to recover in its 2011 declaratory action lawsuit after the March 21, 2012 ruling, and **Wickett** is directly applicable.

True Railroad also attempts to overcome application of the law of the case, which would apply regardless of whether the March 21, 2012 order was actually final. True Railroad suggests that our prior decision that the March 21, 2012 order was final and appealable when entered was incorrect *dicta*. We believe that our prior decision was correct under the above-analyzed case law. Indeed, the fact that the order was final is directly evidenced by True Railroad's attempt to appeal the March 21, 2012 order when it was entered as well as its position in its application for re-argument and petition for allowance of appeal that the March 21, 2012 order was final.

Furthermore, the prior panel's conclusion that the March 21, 2012 was final is not *dicta*. We did not quash the appeal because it was filed from an interlocutory order; our quashal was expressly premised upon the fact that the prior appeal was untimely filed from a final order. Our disposition of the appeal was directly affected by the finding that the March 21, 2012 order was final, and that finding cannot be construed as *dicta*. **See In re L.J.**, 79 A.3d 1073 (Pa. 2013) (a court's pronouncement is *dicta* if it is unnecessary to the case's outcome.). Hence, we conclude that, in this appeal, True Railroad cannot challenge the propriety of the March 21, 2012 order both because it was a final, appealable order when it was entered and because we are bound by the prior panel's ruling that it was final. The May 14, 2015 order refusing to vacate the March 21, 2012 order based upon the doctrine of *res judicata* was therefore unassailable.

True Railroad's second contention on appeal is that it was entitled to void the exercise of the Purchase Option and to terminate the sales agreement on the basis that Ames failed to appoint an independent appraiser, as outlined in the Purchase Option. Ames engaged the real estate services firm CBRE as its independent appraiser. As outlined above, this position was decided against True Railroad after a nonjury trial. "[W]e review the trial court's nonjury verdict to determine if the trial court's findings are supported by the evidence or whether the trial court committed legal error." **Palmieri v. Partridge**, 853 A.2d 1076, 1078 (Pa.Super.

2004). Herein, the trial court found that True Railroad had not established that CBRE lacked independence.

True Railroad first assails this finding by maintaining that the trial court utilized an improper standard for assessing independence, arguing that an appraiser is independent only if he is "disinterested and objective." Appellant's brief at 42. Herein, the trial court concluded that independence, as contained in the contract, had its ordinary and natural meaning, which is "freedom from outside control or support." http://www.merriam-webster.com/dictionary/independence; *See* Trial Court Opinion, 10/20/15, at 8. We concur with the trial court's interpretation of the meaning of the word in question. It is well-established principle that words in a contract "are to be construed in their natural, plain, and ordinary sense, . . . and we may inform our understanding of these terms by considering their dictionary definitions." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 595, 608, 735 A.2d 100, 108 (Pa. 1999); *Accord Telecommunications Network Design v. Brethren Mut. Ins. Co.*, 5 A.3d 331 (Pa.Super. 2010). Thus, the trial court did not err in applying the dictionary definition of the term independent.

True Railroad next posits that CBRE was "not independent because it was Ames's agent." Appellant's brief at 43. Relying upon its own evidence, True Railroad maintains that it established that CBRE was subject to Ames' control. True Railroad, however, ignores the fact that the trial court refused

to credit its proof. Trial Court Opinion, 10/20/15, at 9. The court observed that the evidence failed to establish that CBRE violated any provisions of the applicable codes of professional conduct and rejected that the appraiser was subject to the control of Ames. *Id*. at 4 (rejecting testimony from True Railroad that "was offered to show that [Ames] had directed, controlled or required an outcome from the appraisers"); *Id*. at 10 ("The Ames' appraiser was compliant with the knowledge requirement of the [Uniform Standards of Professional Appraisal Practice] and was not improperly or fraudulently influenced by [Ames'] management in the course of compliance.").

Essentially, then, True Railroad is maintaining that the trial court was required to accept its proof that CBRE was subject to Ames' control and was not independent. This position is contrary to the settled legal precept that,

> "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, **or none of the evidence presented**." *Stokes v. Gary Barbera Enterprises, Inc.,* 783 A.2d 296, 297 (Pa.Super. 2001), *appeal denied,* 568 Pa. 723, 797 A.2d 915 (2002). "This Court is not free to usurp the trial court's duty as the finder of fact." *Isralsky v. Isralsky*, 824 A.2d 1178, 1190 (Pa.Super. 2003) (quoting *Nemoto v. Nemoto,* 423 Pa.Super. 269, 620 A.2d 1216, 1219 (1993)).

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa.Super. 2009) (emphasis added). The trial court's decision to reject True Railroad's proof at the non-jury trial cannot be reversed by this Court.

Additionally, even if we were to conclude that Ames' appraiser was not independent, we would affirm the trial court's conclusion that True Railroad was not permitted to avoid its obligations under the Purchase Option due to Ames' purported failure to obtain an "independent" appraiser. Simply put, the independence of the appraiser was not a material provision in the contract, and Ames' alleged breach of its obligation to obtain an independent appraiser did not provide True Railroad with grounds to avoid its duty to sell the property to Ames.[4]

Only a material breach will permit a contracting party to avoid its contractual obligations under an agreement. **Widmer Eng'g, Inc. v. Dufalla**, 837 A.2d 459 (Pa. Super. 2003). "When performance of a duty under a contract is due, any nonperformance is a breach." **Id**. at 467 (quoting Restatement (Second) of Contracts § 235(2)). When "a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract." **Widmer**, **supra** at 467. On the other hand, if the "breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains

---

[4] The trial court's opinion indicates that, in hindsight, it should have granted Ames' preliminary objections filed to the 2014 complaint on the basis that it was immaterial whether Ames obtained an independent appraiser. Trial Court Opinion, 10/20/15, at 8.

effective." *Id*. The non-breaching party simply does not have the right to suspend its performance under an accord if a breach is not material. *Id*.

The question of "[w]hether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end 'is a question of degree; and it must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case.'" *Id*. at 468 (partially quoting *Gray v. Gray*, 671 A.2d 1166, 1172 (Pa.Super. 1996)). We apply these factors:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
>
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Widmer*, *supra* at 468 (quoting Restatement (Second) of Contracts § 241).

In this case, any failure by Ames' appraiser to be "independent" was, simply put, entirely inconsequential to True Railroad. The appraisals ordered by True Railroad and Ames differed by over 110%, and an appraiser was

appointed by the court. **See** footnote 1, *supra*. True Railroad was not deprived of any benefit which it reasonably expected by the supposed lack of independence of Ames' appraiser in that an impartial appraisal was conducted by the court-appointed appraiser and utilized to fix the sale price. Thus, the first factor pertinent to materiality test is not present herein. In light of this finding as to the first element of the above-test, the second consideration becomes inapplicable. As to the third aspect of the test, Ames will suffer a complete forfeiture based upon a matter that did not affect True Railroad to any degree since the market value of the real estate was fixed by the court-ordered appraisal.

Regarding the fourth element, any default in connection with the chosen appraiser was cured when a court-appointed appraiser was obtained. Since the trial court concluded that True Railroad did not establish the lack of independence of Ames' appraiser, the record does not support a finding that Ames operated in bad faith. Accordingly, Ames' allegedly failure to obtain an independent appraiser was not a material breach of the contract terms, and True Railroad was not absolved of its duty to sell the property in question to Ames on this ground.

True Railroad counters that the selection of an independent appraiser was a condition precedent to its obligation to perform under the Purchase Option so that Ames' failure to obtain one released True Railroad from its duty to honor the exercise of that Purchase Option, regardless of the

materiality of that condition. *See* Appellant's brief at 40 n. 16. True Railroad's argument is as follows. It notes that "[p]arties may condition one party's duty on the other party's performance of its obligations," and that "[w]here a party's fulfillment of an obligation is made a condition, the failure of a party to satisfy that promised duty is both a breach and a failure of the condition." *Id*. True Railroad then observes that "the failure of the condition automatically discharges the other party's duty, regardless of the materiality of the breach." *Id*. (emphasis omitted).

Restatement of contracts §§ 224 and 225 set forth these principles. Under § 224, "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Pursuant to § 225:

> (1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.
>
> (2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.
>
> (3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

Restatement (Second) of Contracts § 225. "Generally, an act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties." ***Shovel Transfer &***

- 30 -

***Storage, Inc. v. Pennsylvania Liquor Control Bd.***, 739 A.2d 133, 139 (Pa. 1999).

We discount True Railroad's attempt to characterize the selection of an independent appraiser as a condition precedent to its obligation to sell the property to Ames. The Purchase Option had three requirements that were conditions to its valid exercise: Ames could not be in default under the Lease; Ames had to send written notice of its intent to exercise the option; and the written notice had to be disseminated during the Option Period. Once those conditions were fulfilled, True Railroad's duty to sell was triggered.

The selection of an appraiser was merely the mechanism by which the sales price was determined. The exercise of the Purchase Option was not conditional or dependent upon Ames' selection of an independent appraiser. The appraiser chosen by each party was merely one step to determine the fair market value at which Ames was to purchase the leased premises. ***See Atlantic LB, Inc. v. Vrbicek***, 905 A.2d 552 (Pa.Super. 2006) (refusing to find tenant forfeited its purchase option contained in lease even though tenant occasionally was late paying rent, a default under the lease terms).

True Railroad's next argument on appeal is that Ames' request for rent credit was procedurally improper since it was made during trial. It maintains that it could not properly respond to that request by demonstrating that some of the delay in this matter was attributable to Ames, suggesting that

Ames refused to engage in discovery and that Ames did not timely request the court-appointed appraiser. True Railroad's position is untenable. True Railroad instituted the 2011 action two weeks after Ames exercised its Purchase Option. After the trial court's March 21, 2012 declaration that Ames validly exercised the Purchase Option under the clear and unambiguous language of the Lease, the court suspended discovery. True Railroad appealed the March 21, 2012 decision, obtaining a stay of the proposed sale. On December 30, 2013, our Supreme Court denied allowance of appeal of our decision in that appeal. True Railroad instituted the 2014 action three days after denial of allowance of appeal.

In the 2014 lawsuit, True Railroad advanced the position that it was relieved of its duty to sell the property to Ames because Ames' appraiser supposedly was not independent. After the nonjury trial, the trial court rejected the position that Ames' appraiser was not independent. It simultaneously ordered an appraisal by the court-appointed appraiser and for the sale to proceed. All of the delay in the sale of the property was directly attributable to True Railroad's actions in these two lawsuits.

In seeking credit for rent that it had paid while True Railroad continuously attempted to avoid its obligation to sell it the real estate, Ames' position at trial was that, if True Railroad had properly performed its contractual obligations under the Lease, the closing would have occurred in April 2012. This position was accepted by the trial court.

Ames sent True Railroad a notice of default in 2011, and averred that True Railroad was in default in its counterclaim in the 2011 action. That counterclaim remained pending when the two cases were submitted for a consolidated trial. True Railroad thus was fully aware of Ames' position that True Railroad breached the contract when it instituted the lawsuit rather than consummate the sale. The pertinent law is:

> Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

*Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010) (citation omitted). As the outcome of these proceedings demonstrates, True Railroad was not legally justified in refusing to honor Ames' exercise of the Purchase Option. By rendering a verdict favor of in Ames on the rental issue, the trial court necessarily concluded that True Railroad breached the contract by improperly refusing to sell Ames the property. The rent that Ames paid while the two actions were pending was a natural and foreseeable loss that it suffered from the breach. The damages were proven with reasonable certainty since the amount of rent was set forth in the Lease. We thus conclude that there was no procedural

impropriety in Ames' request for a credit at closing in the amount of rent that it paid.

True Railroad also suggests that it was entitled to an offset against the rental paid, as follows. If True Railroad had proceeded with the sale, it would have realized profits from the money that it received from the sale by re-investing the sale proceeds. True Railroad argues that Ames' damages should be offset by the amount of return that True Railroad would have realized from investing the proceeds of the sale. Appellant's brief at 51-52. True Railroad, not Ames, is responsible for the fact that the sale did not occur, and True Railroad's default does not relieve it from liability for damages suffered by Ames and occasioned by that default.

We also reject True Railroad's position that Ames voluntarily paid the rent and cannot seek its return. Appellant's brief at 52-53. Ames was legally obligated to pay rent under the Lease and could not avoid that obligation until it became the owner of the property. Indeed, the failure to pay rent was a condition of default under the Lease, and the Purchase Option could not be exercised if Ames was in default under the Lease. If Ames had ceased paying rent while True Railroad attempted to avoid its obligation to sell Ames the property, that failure would merely have given True Railroad more fuel to contest the legal validity of Ames' exercise of the Purchase Option.

The final issue presented on appeal pertains to the trial court's decision to award attorneys' fees. We review an order awarding attorneys' fees under an abuse-of-discretion standard. *Scalia v. Erie Ins. Exch.*, 878 A.2d 114 (Pa.Super. 2005). True Railroad first claims, "No authority supports the award of attorneys' fees." Appellant's brief at 54. We disagree. Herein, the trial court awarded attorneys' fees under the parties' contract:

> Attorneys' Fees. The non-prevailing party in a court of law shall reimburse the other for the expense of reasonable attorneys' fees and disbursements incurred by the prevailing party if the other party shall at any time be in default hereunder and the prevailing party shall incur same in enforcing the terms and provisions of this amended and restated lease.

Lease at Art. 38. True Railroad was the non-prevailing party in these lawsuits and was found in default of its obligations under Article 42 of the Lease. Article 38 clearly authorized the imposition of attorneys' fees to Ames.

True Railroad next claims that the fee request "was procedurally improper" since Ames made it at the bench trial and did not offer any evidence "to itemize, explain, or justify its claim to attorneys' fees." Appellant's brief at 54. As outlined above, Ames asked for attorneys' fees in its 2011 counterclaim, which remained pending when the consolidated matters proceeded to a bench trial. Ames also had asked for attorneys' fees in a separate petition filed during the pendency of these lawsuits. Thus,

there was nothing procedurally improper about its request for those fees at trial.

Additionally, the trial court did not set a specified amount to be paid to Ames for attorneys' fees. The court held that Ames was entitled to those fees under the Lease, and it ordered that $500,000 be placed in escrow at the closing. It deferred ruling on the exact amount to be paid to Ames from that escrow amount. True Railroad will be entitled to contest the amount awarded to Ames once that amount is calculated, if those fees are not properly itemized, explained, or justified.

True Railroad's next position as to attorneys' fees is that Article 38 of the Lease was inapplicable. True Railroad first maintains that Article 42, which contains the terms of the Purchase Option, "is not part of the lease under Pennsylvania Law" so that Article 42 is not subject to Article 38. Appellant's brief at 55. For this rather astonishing position, True Railroad relies upon one case, *W. Penn Realty Co. v. Acme Markets, Inc.*, 303 A.2d 836 (Pa.Super. 1973), wherein we were analyzing whether the tenant properly exercised an option to renew a lease. True Railroad conveniently quotes the portion of *West Penn* that states, that "an option in a lease is a contract independent of the lease contract" but then it omits the portion of the quotation indicating that the option in question was "an option to enter into a new lease[.]" *Id*. at 837.

The case that **West Penn** cited for this proposition clearly denotes that an option to purchase is not a separate agreement when it is contained in a lease. Rather, that decision holds that a purchase option "must be considered as **an independent clause in the agreement**." *Signor v. Keystone Consistory, A. A. S. R., Scranton, Pa.*, 121 A. 320, 321 (Pa. 1923) (emphasis added); *see also Pettit v. Tourison*, 129 A. 587, 588 (Pa. 1925) ("The option to purchase is an **independent clause in the lease**, giving the lessee the right to purchase the property within the time specified.") (emphasis added). Article 42 was contained in the Lease, even though it was an independent clause. Article 42 was not a different contract that was not subject to the other terms of the Lease. Therefore, Article 38 applied. [5]

True Railroad's next position is that the defaults and remedies clause in Article 42 rendered Article 38 inapplicable. Appellant's brief at 55. That portion of the Lease provided:

> Defaults and Remedies. If either party should fail to perform any of its obligations under this Article 41 and before the Closing within the applicable time period specified herein, or if no such time period has been so specified, within seven (7) days after the other party has given to the defaulting party written notice of such event, then the other party shall have the

---

[5] True Railroad's reliance upon *Atlantic LB, Inc. v. Vrbicek*, 905 A.2d 552, (Pa.Super. 2006), affords it no relief. Appellant's brief at 55. Therein, we did not hold that an option to purchase property contained in a lease was a separate agreement that was not subject to the other terms of the lease.

right, at its option and without further notice to exercise and enforce any one or more of the following rights and remedies: (i) to the extent permitted by law, it may sue for specific performance; (ii) it may terminate the agreement of purchase and sale which resulted from the exercise of the Purchase Option by giving to the defaulting party written notice of such termination; (iii) it may sue for damages resulting from the breach; or, it may exercise and enforce any other right or remedy afforded to it by law or equity.

Lease at Art. 42(i). This clause merely outlines the defaults and remedies for breach of the Article itself. It does not discuss attorneys' fees and does not abrogate the independent clause contained in Article 38, which accorded Ames the right to obtain attorneys' fees if Ames prevailed in a lawsuit due to True Railroad's breach of the terms of the Lease. We thus reject True Railroad's challenges to the award of attorneys' fees.

The appeals at 1000 MDA 2015, 1001 MDA 2015, and 1312 MDA 2015 are quashed. The order entered on July 22, 2015 and appealed at docket number 1311 MDA 2015 is affirmed. The order entered on August 12, 2015, and appealed at docket number 1448 MDA 2015 is affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/13/2016