J-S84016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAWN E. HUPP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CRAIG T. WHEELAND | : | |
| | : | |
| Appellant | : | No. 1221 MDA 2017 |

Appeal from the Order Entered July 6, 2017
In the Court of Common Pleas of Northumberland County Civil Division at
No(s):  CV-2010-02026

BEFORE:  SHOGAN, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 20, 2018**

Craig T. Wheeland (Husband) appeals from the order, entered in the Court of Common Pleas of Northumberland County, which amended the trial court's prior equitable distribution order pursuant to this Court's remand decision.  ***See Hupp v. Wheeland***, 1444 MDA 2016, unpublished memorandum (Pa. Super. filed June 12, 2017).  After our review, we affirm.

The facts, as set forth by the trial court, are as follows:

The parties were married on May 19, 2001. This was [Husband's] third marriage, and it was [Wife's] second marriage. Each had children from the prior marriages. They had a son together, born June 8, 2005. [Wife] was employed by the Lewisburg School District as a teacher's aide, earning approximately $20,000.00 per annum. . . . [Husband] was a federal employee at the United States Penitentiary in Lewisburg, with earnings in 2012 of $58,707.00. The marriage lasted nine years, with the date of separation on April 23, 2010. The exclusive possession of the marital home was awarded to [Wife] by court decree on December 12, 2010.

The marital home was constructed around the time of the marriage. The land was a 3 acre parcel donated to them by [Wife's] parents, carved out of the family farm. [Husband] contributed his own funds of $20,000.00 toward the construction from his sale of his own home. The marital home now has a fair market value of $225,000.00. There are two mortgages thereon totaling $97,420.58, leaving an equity of $127,579.49.

As the Master noted, [Wife] desired foremost to be awarded the realty in view of its location adjacent to her family's farm. [Wife] also claimed tangible property of $9,125.00 that was awarded to her.

The other large assets are [Wife's] pension of $38,377.98 as her marital portion established by the Master. [Husband] has a savings plan in connection with his employment (Thrift Savings Plan) that was valued by the Master as to [Husband's] marital portion in the sum of $97,711.74. Lastly, there is [Husband's] federal pension as to which it was determined that the most suitable approach is to divide, by appropriate qualified order for distribution (COAP), as the time of [Husband's] retirement, as noted by the Master as "the safest route."

Since [Wife] had exclusive possession of the marital home for Five and a half years prior to the award here, there had to be taken into account [Husband's] credit for his share in the loss of the fair rental value at $1,800.00 per month; thus, his loss of rental income during [Wife's] exclusive possession was $54,000.00. However, [Wife] was making mortgage payments to which she was then entitled a credit from [Husband] that was in the undisputed amount of $18,822.75.

The parties were both in their mid-forties, in relatively good health. Neither contributed to the education or training of the other spouse. [Wife] had some training and experience as a dental assistant, so she could pursue this avenue for increased earnings, and to work in the summer months. [Husband's] employment was stable, but he did not have much of any increase in salary over the past four years prior to the hearing. There is no separate property. The parties had a modest standard of living, with no unusual tax ramifications to transfer of assets.

[Wife] had custody of their teenage son, for which she was receiving child support of approximately $655.00 per month, as well as APL of $526.00.

As requested, [Wife] was awarded the marital home. However, there is a substantial amount of equity therein to which [Husband] was entitled to his proportionate share. The scheme devised was for [Wife] to retain her entire pension she earned during the marriage. She also owed [Husband] a substantial rental credit as these divorce proceedings dragged out over four years until the Master's hearing was even held. In making the calculations there was a net obligation for [Wife] to pay [Husband] the sum of $33,748.99 to achieve economic accord.

This court also considered the possibility that [Wife] may not elect or be able to pay [Husband's] share within a reasonable time (60 days) and also retain the home. In that event, the realty would be placed for sale with a realtor with [Wife] receiving a greater share of the net proceeds by an additional $27,167.01 to her.

Trial Court Opinion, 10/26/16, at 1-3.

By way of background, the marital estate was valued at $707,448.66, and the trial court determined that a 50-50 distribution was equitable. Pursuant to the calculations, Husband would receive $355,645.63 (50.27%), and Wife would receive $351,803.03 (49.73%).

In the prior appeal, by Wife, this Court determined that the trial court had abused its discretion in granting a fair rental credit to Husband and in calculating the credit. *Hupp*, *supra* at 6. We also found that the trial court had erred, due to a scrivener's error, in finding Husband had received $9,125.00 of tangible property and Wife had received $5,000.00 in tangible property, when in fact those numbers were inadvertently transposed by the Master.

The equitable distribution chart reads, with the numbers at issue in bold, as follows:

| Marital Asset | Total | Husband | Wife |
|---|---|---|---|
| | $707,448.65[1] | 355,645.63 | 351,803.03 |
| Tangibles | 14,125.00 | **9,125.00** | **5,000.00** |
| Jeep Liberty | 7,458.00 | | 7,458.00 |
| Dodge Truck | 2,342.00 | 2,342.00 | |
| Volkswagen | 1,000.00 | | 1,000.00 |
| Wife's Pension | 38,337.98 | | 38,337.98 |
| Husband's TSP | 121,831.00 | 121,831.00 | |
| Husband's FERS | 394,775.25[2] | 197,387.63 | 197,387.63 |
| Real Estate | 225,000.00 | | 225,000.00 |
| PHFA Debt | (81,787.30) | | (81,787.30) |
| HELOC Debt | (15,633.28) | | (15,633.28) |
| **Fair Rental Value Credit** | | **2,460.00** | **(2,460.00)** |
| Post Separation Debit Credit | | 22,500.00 | (22,500.00) |

This Court recalculated the totals based on the proper apportionment of tangible property, resulting in $351,520.63 to Husband (49.69%) and

---

[1] We note that there is a one-cent mathematical error here, which has been carried over to the trial court's Pa.R.A.P. 1925(a) Statement in Lieu of Opinion filed on August 31, 2017.

[2] We note another one-cent mathematical error here, which has been carried over to the trial court's Pa.R.A.P. 1925(a) Statement in Lieu of Opinion filed on August 31, 2017

$355,928.03 to Wife (50.27%), and noted that the court's final decree, contrary to the chart, showed the correct distribution of tangibles. **Hupp**, **supra** at 8. Additionally, with respect to the fair rental value credit, the master had determined that Husband was owed $1,800.00 per month (stipulated rental value) for 60 months, when it was undisputed that Wife had exclusive possession of the marital residence. During that time, Wife was paying the monthly mortgage payments of $1,718.00. The $82.00 per month difference for 60 months totals $4,920.00 ($1,800.00 - $1,718.00 x 60 = $4,920.00). The fair rental value credit was then determined by granting Husband half that amount, or $2,460.00, and subtracting the same amount from Wife's side of the ledger.

However, this Court noted that the trial court, in ruling on exceptions, erroneously determined *that Wife owed Husband an additional $33,748.99*[3] by inadvertently double crediting Husband. **Id.** at 9. We quoted from the trial court, as follows:

> The record before the Master established the fair rental value at $1,800.00 per month; thus, [Husband's] loss of rental income during [Wife's] exclusive possession was $54,000.00. However, [Wife] was making mortgage payments to which she was then

---

[3] Although the trial court came up with this figure, the correct amount would be $35,177.25 ($54,000.00 - $18,822.75), which this Court noted in its memorandum decision. **See Hupp**, **supra** at 9 n.8. We also note that on June 13, 2017, after this Court filed its memorandum decision, the trial court entered an amended decree, stating that the net obligation Wife was to pay Husband was $35,177.25. In any event, that figure should have factored into the calculation as the fair rental value credit has already been determined as $2,460.00.

entitled a credit from [Husband] that was in the undisputed amount of $18,822.75.

*Id.*, quoting Trial Court Opinion, 10/26/16, at 2-3. We stated that this would create a skewed distribution in favor of Husband ($382,809.62, or 54.11% to Husband, and $324,639.04, or 45.89% to Wife). We also noted that in addition to miscalculating the fair rental value, the trial court failed to adjust any value of other items distributed to retain the 50/50 division that was recommended by the master and accepted by the trial court. *Hupp v. Wheeland*, *supra* at 9. Thus, because the trial court erred in calculating the fair rental value, we vacated that portion of the trial court's decision and remanded so that the trial court could "reinstate the Master's calculations regarding fair rental value so that the 50/50 division remains." *Id*. at 10.

On remand, the trial court did just that. The court entered a Second Amended Degree on July 6, 2017, and reinstated "the Master's calculations regarding fair rental value" and amended the decree "to reflect such calculation and retain the overall 50/50 division of the marital estate." Second Amended Decree, 7/6/17. The court stated that the net obligation for Wife to pay Husband was $2,203.70 (one-half of the difference resulting from the reinstatement of the Master's calculations – Wife received $355,928.03 and Husband received $351,520.63, a difference of $4,407.40).

Husband filed this appeal, and he claims the trial court's response to this Court's remand order was in error. He argues that the trial court's determination that his obligation of $2,203.70 to Wife negates his "actual

post-separation contributions" and is inconsistent with this Court's remand decision and our decision in **Trembach v. Trembach**, 615 A.2d 33 (Pa. Super. 1992). We disagree.

We read Husband's argument as an attempt to relitigate the issue of the fair rental value credit to which he is entitled. This Court specifically ordered the trial court to reinstate the Master's calculations; Husband argues that the Master' calculations are flawed, citing to **Trembach**.

In **Trembach**, we held that the trial court abused its discretion in allowing wife, the dispossessed party from the marital residence, a credit for the entire rental value of the former residence. We stated:

> In this case it is clear that the court of common pleas abused its discretion by allowing [wife], the dispossessed party, a credit for the entire rental value of the former marital residence. The credit is simply not proportionate to [wife'] interest in the former marital residence. The right to the credit is based upon compensating a dispossessed party for her/his interest in the property. Clearly, [wife] does not have a one hundred percent interest in the marital residence. [**Wife**] **was entitled only to a credit up to the extent of her interest in the property**.

**Id.** at 37 (emphasis added). That is not the case here. As stated above, the Master determined that Husband was owed the stipulated $1,800.00 per month rental value for 60 months, the undisputed time that Wife had exclusive possession of the marital residence, less Wife's monthly mortgage payments of $1,718.00, which amounted to $82.00 for 60 months, or $4,920.00. The Master properly calculated Husband's interest in the marital residence, and halved that amount, which entitled him to $2,460.00.

The trial court complied with this Court's remand order, and Husband's attempt to avoid the law of the case must fail. ***See Zane v. Friends Hosp.***, 836 A.2d 25, 29 (Pa. 2003) (law of the case doctrine is important tool of judicial efficiency that "serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation."); ***see also True Railroad Associates, L.P. v. Ames True Temper, Inc.***, 152 A.3d 324 (Pa. Super. 2016) (upon second appeal, appellate court may not alter resolution of a legal question previously decided by the same appellate court), citing ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2018