J-A25039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HIDDEN RIDGE CONDOMINIUM ASSOCIATIONS, INC., A PENNSYLVANIA NON-PROFIT CORPORATION, AND JILL WANZIE, TOM BURICH, KATHLEEN RAUSCHER, KAREN LOFE AND COREY SIGLER, AS TRUSTEES AD LITEM OF THE EXECUTIVE BOARD OF THE HIDDEN RIDGE CONDOMINIUM ASSOCIATION, ON THEIR OWN BEHALF OF ALL THE OTHERS SIMILARLY SITUATED | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| P. RONALD SABATINO, A/K/A RONALD SABATINO; SCIOTO CONSTRUCTION COMPANY, A PENNSYLVANIA CORPORATION; AND T&R PROPERTIES, INC., AN OHIO CORPORATION. | : : : : : : : | |
| APPEAL OF: SCIOTO CONSTRUCTION COMPANY | : : | No. 873 WDA 2021 |

Appeal from the Judgment Entered July 16, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-08-021879

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

DISSENTING MEMORANDUM BY KUNSELMAN, J.:**FILED: MARCH9, 2023**

## I.     Introduction

This contract case, regarding the ownership and maintenance of a pond in a residential development in South Park Township, has swamped the Court of Common Pleas of Allegheny County and this Court since 2008.  Today, this Court offers its fifth decision in this matter.  The Majority again remands and

directs the trial court to wade through yet another evidentiary hearing. I believe remand is unnecessary and erroneous. In my view, the trial court correctly entered judgment for Hidden Ridge Condominium Associations, Inc.; its executive board members; and a class of condominium owners (collectively, "Hidden Ridge"). Thus, I dissent from the Majority and I would affirm.

## II. Factual & Procedural Background

In the early 2000s, Scioto Construction Company undertook the venture of building condominiums in South Park. The project design called for several structures, roads, and a stormwater-detention facility. Scioto named the new development Hidden Ridge.

Prior to breaking ground, on June 5, 2002, P. Ronald Sabatino, as president of Scioto Construction, entered a Land Development Agreement with South Park Township. *See* N.T., 4/11/18, at 58; N.T., 7/25/18, at 150. The agreement referenced and incorporated "ordinance[s] 596 and 487 of the South Park Township Code . . . ." N.T., 7/25/18, at 150. Under Ordinance 596 (adopted in 1999), the township would not "accept stormwater-detention ponds" for dedication.[1] In their Land Development Agreement, Mr. Sabatino and Scioto "acknowledge[d] and understood that it was the intent of the

---

[1] The ordinance provides, "It is the expressed intention of the Township to not accept the dedication of stormwater-detention and/or management systems." South Park Township, Pa. Ordinance No. 596, Code § 118.29.3 (some capitalization removed).

- 2 -

township not to accept the dedication of the stormwater-detention system" at Hidden Ridge. *Id.* at 152.

Thereafter, Scioto erected several Hidden Ridge structures. During the construction, as required by township ordinance, Scioto installed pipes from the structures' downspouts, supposedly leading to the on-site pond.

Buyers purchased individual units in the buildings and joined the Hidden Ridge condominium association. Eventually, Hidden Ridge sued Mr. Sabatino, Scioto, and T&R Properties, Inc. Among a host of claims, they asserted Scioto improperly constructed the stormwater-detention facility.

In June of 2012, a jury returned a verdict in favor of Hidden Ridge on a cause of action not relevant to this appeal. The parties then began negotiating over the remaining issues, including Scioto's construction and dedication of the stormwater-detention facility. *See id.* at 173. On September 21, 2012, they entered a Settlement Agreement.

Scioto agreed to finish the stormwater-detention facility "and dedicate it to South Park Township by December 2014." Settlement Agreement and Release at 5, § 1.3. Based on that language and the trial court's recollection of the negotiations, it found the parties "bargain[ed] for Scioto to restore and convert the [storm]water-detention facility, so that South Park would accept dedication and . . . all future maintenance responsibilities from Scioto." Trial Court Opinion, 11/26/18, at 9.

In January 2015, Hidden Ridge petitioned the court to enforce the Settlement Agreement. It alleged Scioto's obligation to complete and dedicate

- 3 -

the stormwater-detention facility were "material terms" of the Settlement Agreement and that "the time period for completion of the facility's dedication to South Park Township has now expired." Hidden Ridge's Petition to Enforce at 2-3. Hidden Ridge sought specific performance. Namely, it asked the trial court to issue "an order compelling Scioto to fulfill its obligations pursuant to the terms of the release or suffer further sanctions as the court deem[ed] appropriate." *Id.* at 3.

At a February 17, 2015 hearing on Hidden Ridge's petition, the parties agreed Scioto had neither completed nor dedicated the stormwater-detention facility to South Park. *See* Scioto's Brief at 14. The trial court therefore entered a "consent order." N.T., 7/25/18, at 154. The consent order granted Hidden Ridge's Petition to Enforce Settlement Agreement and directed that:

> Scioto Construction Company shall complete construction of the stormwater-detention facility and take the appropriate steps to have [it] dedicated to and accepted by [South Park] Township, without further delay, weather permitting. Should Scioto fail to satisfy any of these obligations by June 30, 2015, then [Hidden Ridge] may proceed with a Motion for Sanctions and request the entry of such sanctions as the court deems appropriate, including an award of reasonable attorney fees and any other reasonable costs associated with the construction and/or acceptance of the stormwater-detention facility.

Trial Court Order, 2/17/15, at 1-2 (some punctuation omitted).

That summer, Scioto completed the pond and asked the township to inspect it the following November. On December 4, 2015, the township's engineer reported his findings to South Park Code Enforcement Officer, Gary

Wargo. The engineer did not indicate that any additional work on the pond was needed; however, Scioto still failed to dedicate the stormwater-detention facility to South Park. *See* N.T., 4/11/18, at 35.

A year-and-a-half later, on August 4, 2017, Hidden Ridge's attorney sent a letter to Scioto's counsel inquiring into the dedication process. Hidden Ridge understood that "the Township [had] not accepted the pond." Hidden Ridge's 7/25/18 Hearing Exhibit 12.

Scioto did not reply. *See* N.T., 7/25/18, at 12-14.

Meanwhile, Allegheny County contacted Scioto regarding an error in the property records of Hidden Ridge. *See id.* at 28. In response, Mr. Sabatino, on behalf of Scioto, executed a quitclaim deed on October 5, 2017. The deed granted Hidden Ridge "ANY AND ALL INTEREST that [Scioto] has or may have in . . . the common grounds in the Hidden Ridge Condominium-Phase 2 . . . ." Hidden Ridge's 7/25/18 Hearing Exhibit 13 at 1. The "common grounds" included the pond. *See* N.T., 7/25/18, at 20; *see also* Hidden Ridge's 7/25/18 Hearing Exhibit 21.

However, Mr. Sabatino did not tell Hidden Ridge that the quitclaim deed existed or that Scioto recorded it on October 13, 2017. *See* N.T., 7/25/18, at 23-24. Hence, Hidden Ridge never accepted the deed or the land it purported to convey. *See id.* at 97, 99.

The next month, Chris Sperl, an employee of Matt Mertz Plumbing, Inc., inspected the storm pipes of Hidden Ridge's buildings. Mr. Sperl ran cameras down them and found that several pipes at Buildings 600, 800, and 900 were

broken, collapsed, or angled upwards. Additionally, Scioto had not buried them deeply enough to prevent that damage. Thus, certain pipes were not transporting stormwater to the stormwater-detention pond.

On January 20, 2018, Mr. Sperl provided Hidden Ridge with an estimate of $66,000 to repair the pipes. *See* N.T., 4/11/18, at 13; *see also* Hidden Ridge's 4/11/18 Hearing Exhibit 8 at 1. Two days later, Hidden Ridge moved for sanctions against Scioto for violating the February 17, 2014 consent order.

Hidden Ridge also hired Gateway Engineers, Inc. to evaluate the pipes. According to the engineering firm:

> we inspected various downspout, subsurface connections, and stormwater piping (piping) where the residents had reported stormwater backups along buildings 200, 400, 600, and 800. Our evaluation concluded that the piping was either severely damaged or that no connection to an external system was ever made . . .
>
> Based on our findings and review of the additional reports, the downspout connections and piping evaluated are not in compliance with industry standards, which typically tie downspouts into storm drains that outlet to stormwater-management facilities or natural watercourses.
>
> Furthermore, the South Park Township Subdivision and Land Development Ordinance section 118.49.5 requires that roof drains be connected directly to underground pipes, which shall flow into an approved, stormwater-drainage system.
>
> Based upon the South Park Township requirement, it can be concluded that the roof-drain piping was a part of the overall stormwater-management system, and any required repairs to the stormwater-management system should include repairs and/or extensions to the aforementioned roof-drain piping.

Hidden Ridge's 4/11/18 Exhibit 3 at 1.

A few months later, in April of 2018, Lawrence Lennon, a professional engineer with over 40 years of experience, oversaw dye tests on the drainage pipes of Buildings 600, 800, and 900. He wanted to learn if the buildings' pipes reached the pond. N.T., 4/11/18, at 26-17; ***see also*** Hidden Ridge's 4/11/18 Hearing Exhibit 8. The test cost Hidden Ridge $2,186.25. ***See*** Hidden Ridge's 7/25/18 Hearing Exhibit 16.

Mr. Lennon described the dye test's results as follows:

> For Building 600 the [downspouts] at the rear . . . connected to a storm drain. The [downspouts] at the front, numbered 1 to 18, four of them . . . connected to a storm sewer.
>
> For Building 800, again, all the [downspouts] at the rear . . . connected to a storm sewer. The [downspouts] at the front of the building, numbered from 1 to 18, it looks like two . . . connected to the storm sewer, and one has a note that dye appeared at the surface.
>
> As for Building 900, at the front of the building, [downspouts] 1 to 13, I believe one . . . connected to the storm sewer. At the rear of the building, [downspouts] 15 through 25, two of them were determined to discharge to the slope behind the building. And I don't recall any notation that any of those . . . connected to a storm sewer at the rear of the building 900.

N.T., 4/11/18, at 27-28. Mr. Lennon concluded the pipes violated South Park Ordinance 118.49.5, which required them to "flow into an approved storm-drainage system." Hidden Ridge's 4/11/18 Hearing Exhibit 8 at 1.

Additionally, the ordinance required that the pipes "be a minimum of four-inch (4") Schedule 40 ABS, PVC, or SDR 35 pipe . . . for a distance of five

feet (5') from the foundation of the dwelling." Hidden Ridge's 4/11/18 Hearing Exhibit 8 at 1. According to Mr. Lennon, "That's a particular type of pipe that has a certain wall thickness. It is intended to be buried underground." N.T., 4/11/18, at 30. The pipes Scioto "installed did not meet that requirement," because they were corrugated plastic. *Id.* Thus, Mr. Lennon agreed with the findings and opinions in Gateway's report. *See id.* at 31; Hidden Ridge's 4/11/18 Exhibit 3.

The trial court held an evidentiary hearing, where Mr. Sperl and Mr. Lennon testified to the above facts and opinions. Code Enforcement Officer Wargo also testified. He explained that acceptance and dedication of land improvements is done through ordinances. Even though South Park passed a 1999 ordinance stating it would not accept stormwater-detention facilities, Mr. Wargo indicated that developers commonly seek exceptions from ordinances. Scioto "never even asked for an exception." *See id.* at 55.

Additionally, according to Mr. Wargo, drainage pipes from the buildings at Hidden Ridge are "a permanent part of the stormwater facility." *Id.* at 85. Mr. Lennon and Gateway Engineers, Inc. agreed with that assessment. *See* N.T., 7/25/18, at 80. Based on this evidence, the trial court found that "the water-conveyance system built to feed the water-storage facility through the use of [pipes] was an integral part of the water-detention facility." Trial Court Opinion, 11/26/18, at 2 (quotation marks omitted).

Further, it had "no doubt . . . Scioto Construction Company [was] in violation of the February 17, 2015 Court Order." Trial Court Opinion & Order,

4/13/18, at 2. Thus, the trial court held Scioto in contempt of the consent order and scheduled a hearing on sanctions for July 25, 2018.

A few weeks later, Hidden Ridge accepted Matt Mertz Plumbing's offer to repair the stormwater pipes at Buildings 600, 800, and 900 for $66,000. Hidden Ridge also hired Matt Mertz Plumbing to replace pipes at Buildings 500 and 700 for $64,000. *See* N.T., 7/25/18, at 42-44; *see also* Hidden Ridge's 7/25/18 Exhibits 14 & 15.

Two-and-half years had passed since the township inspected the pond. In that time, no one maintained it, so the pond fell into disrepair due to a lack of groundskeeping and repairs. The pond became "completely overgrown with weeds, trees, and shrubs, the kind of things that should not be there." *Id.* at 52-53. Dirt and trash formed an emerged "sediment bar" in the pond. *Id.* at 35; *see also* Hidden Ridge's 7/25/18 Exhibit 11, Photograph D.

Mr. Lennon's company offered "to return the stormwater-detention pond to its original, intended conditions" for Hidden Ridge. *Id.* at 55. He estimated the work would cost $88,688. *See id.* at 47. Thus, the combined cost for Hidden Ridge to fund the dye test, to repair the defective stormwater pipes, and to restore the pond was $220,874.25. *See* N.T., 7/25/18, at 62.

After the July 25, 2018 hearing, the trial court imposed an equitable sanction of $39,283.05 and $23,224.60 in litigation fees and costs against Scioto. The parties cross-appealed.

On October 1, 2019, this Court reversed the order of contempt and vacated the orders imposing sanctions and costs. *See Hidden Ridge Condo.*

*Assoc., Inc. v. Sabatino*, No. 1272 WDA 2018, 2019 WL 4864066 (Pa. Super. 2019) (unpublished). Although the record established that Scioto did not comply with the consent order, the trial court did not "credit any evidence that Scioto acted willfully or with wrongful intent." *Id.* at *5. Because "mere noncompliance [with a court order] is insufficient to establish civil contempt," the trial court could not hold Scioto in contempt. *Id.* The panel also noted, "to the extent Hidden Ridge may conclude that Scioto has not met its obligations under the Settlement Agreement, [Hidden Ridge] may file a separate, revised, and/or amended Petition to Enforce, as set forth in the Settlement Agreement." *Id.* at *3 n. 6.

Accordingly, on October 14, 2019, Hidden Ridge filed an "Amended Petition to Enforce Settlement Agreement Pursuant to Superior Court Opinion[2] of October 1, 2019." The Amended Petition renewed the original claim that Scioto breached Section 1.3 of the Settlement Agreement by failing to complete the stormwater-detention facility and to dedicate it to South Park Township by December 31, 2014.

Hidden Ridge further claimed that:

> Scioto has clearly not met [its] obligations under the Settlement Agreement, and this Amended Petition is filed pursuant to the direction provided in the recent Superior Court [decision. That decision] clearly provides a roadmap for Hidden Ridge to pursue the remedies that are available as a result of Scioto breaching the Settlement Agreement. Specifically, proceeding with the Petition to Enforce the

---

2 Technically, we did not issue an Opinion. The decision was an unpublished Memorandum.

Settlement Agreement, [the trial court] can then enter an order which places [Hidden Ridge] in the position [it] would have been in, if Scioto had not breached the Settlement Agreement. These damages were established by testimony offered at hearings on April 11, 2018 and July 25, 2018.

\*      \*      \*

Such damages are appropriate pursuant to the order which has already been entered on February 17, 2019, granting the Petition to Enforce the Settlement Agreement. These damages are also appropriate as a result of Scioto's breach of the Settlement Agreement, as such damages are required to place Hidden Ridge in the position [it] would have been but for the breach.

The damages . . . include the damages which the witnesses testified to at the two hearings [in 2018]. In addition, one of the Exhibits which was introduced at the hearing was the quitclaim deed of October 13, 2017. The maintenance costs which the experts agreed would occur annually can be avoided [if the trial court] enter[s] an order that the quitclaim deed Scioto recorded on October 13, 2017 must be vacated and this parcel revert back to Scioto and/or otherwise be deemed invalid.

Amended Petition at 4-5.

In other words, Hidden Ridge made two changes in its Amended Petition. First, it altered its prayer for relief. Forgoing an equitable remedy of specific performance from 2015, Hidden Ridge now sought a legal remedy of damages. Second, Hidden Ridge added a cause of action for declaratory judgment. It sought a declaration that Scioto's quitclaim deed was invalid and an order striking the deed from the Allegheny County property records.

The trial court related the events thereafter as follows:

The parties presented their pleadings, including a Brief in Opposition filed by Scioto on December 16, 2019. Scioto

- 11 -

maintained that the "summary procedure and relief proposed by Hidden Ridge is inconsistent with the procedural posture of this matter, and with Scioto's substantial rights." [Scioto's] Brief at 4. And further, that "this matter cannot be resolved without a full adversarial proceeding to determine the parties' rights under the Settlement Agreement, including resolution of Scioto's claims against Hidden Ridge relating thereto." *Id.*

Scioto asserted the Amended Petition is in fact an "entirely new Petition, in the nature of an action for damages for breach of contract." *Id.* at 5. Scioto suggested the claims in the amended petition should be pled in a separate complaint which would afford Scioto the full and fair benefit of the Rules of Civil Procedure to defend said claim, including counterclaims, setoff, statute of limitations, etc. *See id.* at 5-6.

Despite these claims, [the trial court] determined: Scioto shall file a reply to the Amended Petition to Enforce Settlement Agreement within 30 days setting forth any defenses they intend to raise; Hidden Ridge may then file a responsive pleading within 30 days thereafter; a hearing will be held . . . on the 2nd and 3rd days of April, 2020 . . . An Answer and Affirmative Defenses to the petition was filed on January 16, 2020, by Scioto. On that same date, Scioto also filed a Complaint at GD 19-17623. A Motion to Consolidate that general docket number with above referenced was filed by Hidden Ridge on February 7, 2020. In both matters, Scioto maintain[ed] that Hidden Ridge [was] inappropriately suspending the voting rights maintained by Scioto. *See* [Scioto's] Complaint, para. 48, GD 19-17623; *see also* [Scioto's] Answer, para. 41, GD 08-21879.

The parties continued to brief the issue to consolidate until [the trial court's] order granting same on February 19, 2020. Included in Scioto's previous filings was their Answer and Affirmative Defenses filed on January 16, 2020. In response thereto, Hidden Ridge had filed a Reply to Answer, that raised preliminary objections to the affirmative defenses raised. [The trial court's] February 19th Order continued the hearing scheduled to be heard on the 2nd and 3rd of April generally, and the April 2, 2020, date was instead rescheduled as an argument date as to the Preliminary

Objections raised by Hidden Ridge in their Reply filed February 18, 2020. *See* Order, 2/19/20.

On March 9, 2020, Hidden Ridge filed a Motion to Strike Defenses pursuant to the Order of Court dated on the 19th of February, 2020 and a Motion for Partial Judgment on the Pleadings. Hidden Ridge assert[ed] that Scioto's claims and defenses must be stricken, as a matter of law, due to "unclean hands." Hidden Ridge assert[ed] that the Parties Settlement Agreement made patently clear that any disputes arising out of that agreement "***shall*** be subject to the exclusive jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania, and it is agreed that the Honorable Michael Della Vecchia retains jurisdiction over this matter for purposes of enforcing the terms of the Settlement Agreement and Release." Motion, para. 8, 3/9/20 (citing Settlement Agreement and Release, para. 8) (emphasis added).

Preliminary Objections to Scioto's January 16, 2020 Complaint were filed on March 10, 2020, along with a Brief in Support and Proposed Order by Hidden Ridge . . . Hidden Ridge assert[ed] the Complaint filed contained the same issues and subject matter as the above referenced general docket number filed in 2008. Hidden Ridge [requested dismissal of] the civil action filed in 2019 with prejudice, as it was both barred and encompassed by our current litigation.

On June 30, 2020, the trial court sustained the preliminary objections . . . and dismissed Scioto's 2019 Complaint. Additionally, this Court continued the discovery period until August 31, 2020 and further allowed the parties to consider their choice of forum, either hearing or oral argument, to resolve outstanding issues. *See* Order, 6/20/20.

\* \* \*

On January 19, 2021, [the trial court ordered] that, in addition to completing the depositions:

As the record has been developed in this case, the [Amended] Petition to Enforce Settlement

- 13 -

Agreement, as well as the claims of Scioto Construction raised in their Answer and Defenses, shall initially be considered by way of dispositive motion. Either party may file a dispositive motion, and upon service on opposing counsel, the response thereto and countermotion shall be filed within 21 days.

\* \* \*

On May 21, 2021, Hidden Ridge filed [its] 121-page Dispositive Motion. In said motion, Hidden Ridge correctly states that pursuant to the Superior Court Opinion at n. 6; "the issue remaining before the trial court was to decide whether Hidden Ridge was entitled to an award of damages and/or other relief to place [it] in a position [it] would have been, if Scioto would have carried out the terms of the Settlement Agreement."

\* \* \*

Expert testimony [at the 2018 hearings] established, through the use of cameras inserted into the drainpipes, that at least three buildings were experiencing defective drainage due to defects existing due to crushed pipes. The expert testified that these defects were the result of the drainage pipes' lack of depth and lack of necessary support. The estimated fee to remunerate the condition was . . . $66,000. **See** Motion, para. 58.

Additionally, this Court was convinced that Scioto's stormwater plan was not acceptable to South Park Township pursuant to their ordinances and regulations. Testimony was accepted as credible that it would cost Hidden Ridge in excess of $88,000 to ameliorate the issues that exist and to comply with DEP and municipality requirements. Motion, para. 102. The expert for Scioto conceded that this amount would exceed $20,000.

Trial Court Opinion, 11/8/21, at 11-16.

The trial court reviewed the arguments and claims of the parties. Based on those arguments and its findings of fact from the 2018 hearings, the court ordered that:

> Judgment is entered in this case against Scioto and in favor of [Hidden Ridge] in the amount of $220,874.25 and the quitclaim deed, which Scioto recorded on . . . October 13, 2017 at Deed Book Volume 298276, is hereby stricken such that Scioto shall remain responsible for the on-going and continued maintenance of the subject parcel until such time as Scioto petitions the trial court based on the Township agreeing to accept and dedicate the subject, stormwater facilities.

Trial Court Order, 7/16/21, at 1-2 (some capitalization removed). This timely appeal followed.

### III.  Analysis

Scioto raises six claims of error. They are:

1.   Whether the [trial] court erred, as a matter of law, entering summary judgment when genuine issues of material fact remained in dispute.

2.   Whether the [trial] court erred, as a matter of law, entering summary judgment without holding a trial or evidentiary proceeding on (or addressing) Scioto's affirmative defenses.

3.   Whether the [trial] court erred, as a matter of law, allowing Hidden Ridge to pursue a cause of action for breach of contract more than four years after Hidden Ridge alleges the breach occurred.

4.   Whether the [trial] court erred, as a matter of law, awarding damages unsupported by – and in fact contrary to – the evidence.

5.   Whether . . . the [trial] court erred as a matter of law or abused its discretion by contradicting in dramatic

- 15 -

fashion its previous findings and conclusions regarding the proper remedy to place the parties where they would have been had the contract been capable of performance.

6. Whether the [trial] court erred, as a matter of law, entering summary judgment against Scioto for breach of contract notwithstanding contract language that is unambiguous or, alternatively, is ambiguous but without hearing evidence bearing on the parties' intent.

Scioto's Brief at 3. I address each issue in turn.

## A.    The Trial Court Did *NOT* Grant Summary Judgment.

First, Scioto contends that the trial court erroneously granted summary judgment to Hidden Ridge.

Initially, Scioto identifies the grounds for Hidden Ridge's damages claim – namely, that the pipes from the buildings to the pond constituted part of the stormwater-detention facility and many of them were broken or did not reach the pond. Scioto quotes testimony from Code Enforcement Officer Wargo, supposedly showing the "term stormwater-retention facility does not include such inlets, pipes, the collection system, or rain leaders, because those are not part of the stormwater-detention system." *Id.* at 34 (emphasis and quotations removed). It therefore alleges the trial court violated the rules governing summary judgment by making credibility determinations to discredit Mr. Wargo's testimony, in order to find that the term "stormwater-detention facility" includes the pipes. *Id.*

Scioto then challenges the damage award of $220,874.25, because "one cannot discern what, if anything, was awarded for future pond maintenance." *Id.* at 36 (emphasis removed). Scioto offers nothing further on this point.

Instead, it jumps to the quitclaim deed. Scioto asserts that, by striking the deed, the trial court created a "paradox" in the judgment. *Id.* In Scioto's view, the trial court mandated that it "is responsible to maintain the property while additionally being ordered to pay Hidden Ridge, so that Hidden Ridge can also have such services performed." *Id.* at 36-37.

Next, Scioto alleges the trial court "attempted to justify its imposition of damages . . . upon a late, supposed finding . . . that the stormwater-detention facilities had never been completed." *Id.* "Except Mr. Wargo testified that the stormwater-detention pond ***was*** compliant with the Code [of South Park] when completed in June 2015 ***and was in fact accepted as compliant.***" *Id.* at 38 (emphasis in original). "To find otherwise is to disregard, not just the evidence, but the summary judgment standards themselves." *Id.*

Scioto then recites the scope and standard of review for summary judgment. ***See id.*** at 39. It closes by stating that "one will search in vain for any effort by the [trial] court to justify its misapplication of the summary-judgment standards and refusal to hold an actual hearing or trial." *Id.* at 39-40. This last statement is true but irrelevant. The trial court did not grant summary judgment, nor was it under any obligation to justify its refusal to hold a hearing or trial.

Instead of granting summary judgment, the appealed from order enforced the expectation interests of the parties' Settlement Agreement by awarding damages for Scioto's breach and by invalidating the quitclaim deed. Thus, Scioto's first appellate issue rests upon an erroneous view of the order's nature, invokes an incorrect scope and standard of review, and warrants no relief. Hidden Ridge identifies Scioto's procedural and legal error. **See** Hidden Ridge's Brief at 17

In this much, the Majority sides with Hidden Ridge. My learned colleagues "do not view this matter as an appeal from an order granting summary judgment pursuant to Pennsylvania Rule of Civil Procedure 1035.6." Majority Memorandum at 15. Instead, they adopt the scope and standard of review for which Hidden Ridge advocates. **See id.** at 16 (quoting **Salsman v. Brown**, 51 A.3d 892, 893-94 (Pa. Super. 2012)). I do too.

The "enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation" of a settlement agreement. **Step Plan Servs., Inc. v. Koresko**, 12 A.3d 401, 408 (Pa. Super. 2010). "Our standard of review over questions of law is *de novo*, and to the extent necessary, the scope of our review is plenary, as the appellate court may review the entire record in making its decision." **Id.** (some punctuation omitted). As for factual findings, "we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." **Id.**

- 18 -

Obviously, Scioto does not address that scope and standard of review, because it frames its first issue as one of summary judgment. **See** Scioto's Brief at 3. Thus, its first appellate argument is flawed, because it seeks to demonstrate genuine issues of material fact, rather than that the trial court's factual findings "are unsupported by competent evidence in the record." **Step Plan Servs.**, **supra.** Recognizing that Scioto did not argue that the evidence is insufficient to support the trial court's factual findings, we should dismiss the issue as meritless, because we are "not [to] develop an argument for an appellant . . ." **Commonwealth v. Cannavo**, 199 A.3d 1282, 1289 (Pa. Super. 2018), *reargument denied* (Jan. 29, 2019). Unfortunately, the Majority does so and thereby reverses based on issues that Scioto neither raised or argued in its brief. Scioto has abandoned and thereby waived those grounds for relief.[3]

_____

[3] Specifically, the Majority purports to combine Scioto's first two issues and to address them together. In actuality, the Majority considers three novel issues *sua sponte*: (1) whether the 2018 hearings "focused on the critical issue raised here – whether Scioto breached the terms of the Settlement Agreement (as opposed to the court's February 2015 order)," (2) whether the trial court's "failure to detail any factual findings in either its July 16th order or Rule 1925 opinion undermines our ability to determine if its factual findings are supported by the record," and (3) whether the trial court violated Scioto's due-process rights. Majority Opinion at 16-17.

Notwithstanding the Majority's dramatic rhetoric that "this Court cannot countenance the deprivation of due process," our rules of appellate procedure require that it does. Majority Memorandum at 17. Pennsylvania courts have long held that "a [party] must preserve on peril of waiver even an issue of constitutional dimension." **Commonwealth v. Veon**, 150 A.3d 435, 456 n.33 (Pa. 2016). Indeed, with few exceptions (such as subject-matter jurisdiction

I therefore limit my discussion to this issue and arguments that Scioto *has* presented. Scioto initially argues the trial court made factual findings and that those findings resolved the credibility of witnesses who testified in 2018. *See* Scioto's Brief at 34-38. Scioto is correct.

However, this argument implies that reasonable minds may differ as to the facts of this case, because credibility determinations were necessary. Under our jurisprudence, "credibility determinations are for the finder of fact, and . . . the trial court was free to believe all, some, or none of testimony." *K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa. Super. 2019). Just as the fact finder may reasonably view the evidence in Scioto's favor, the fact finder may equally view that evidence in favor of Hidden Ridge. Scioto fails to recognize that the trial court's 2018 factual findings resolve this case, as a matter of law.

---

and illegal sentences), issues that an appellant has not raised in the trial court and in its Rule 1925(b) Statement are waived. *See* Pennsylvania Rules of Appellate Procedure 302(a); 1925(b)(vii). Such issues may not be raised for the first time on appeal. *See id.* Moreover, no issue "will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

None of the Majority's grounds for reversal appears in Scioto's 1925(b) Statement or its Statement of Questions Involved, nor does Scioto make those arguments in its brief. Thus, Scioto waived the issues upon which the Majority reverses. By raising its own objections to the trial court's work, the Majority overreaches, and, for all intents and purpose, it revives the doctrine of fundamental error. *See Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 117 (Pa. 1974) (abolishing the doctrine in civil cases). This is reversable error.

- 20 -

As mentioned, the trial court found that "the water-conveyance system built to 'feed' the [storm]water-storage facility through the use of [pipes] was *an integral part* of the water-detention facility." Trial Court Opinion, 11/26/18, at 2 (emphasis added). This factual finding has adequate support in the evidence of record. Mr. Wargo testified that the drainage pipes from the buildings are "a permanent part of the stormwater facility." N.T., 4/11/18, at 85. Mr. Lennon, Hidden Ridge's engineering expert, agreed with this assessment. *See* N.T., 7/25/18, at 80.

Thus, this Court has no authority to revisit the factual findings regarding which improvements were a part of the stormwater-detention facilities, because "we may reverse the trial court *only if* its findings of fact . . . are unsupported by competent evidence in the record." *Step Plan Servs.*, 12 A.3d at 408 (emphasis added). It was solely the trial court's prerogative to credit the above portion of Mr. Wargo and Mr. Lennon's testimony. *See K.B.*, *supra*.

Next, unlike Scioto, I can "discern what [the trial court] awarded for future pond maintenance." Scioto's Brief at 36. Hidden Ridge paid $2,186.25 for the dye test on the stormwater pipes. N.T., 7/25/18, at 62. It also paid a plumbing company $130,000 to repair the defective pipes from the buildings, which the trial court found to be part of the stormwater-detention facility. *See* N.T., 7/25/18, at 42-44; *see also* Hidden Ridge's 7/25/18 Exhibits 14 & 15. Lastly, Mr. Lennon charged Hidden Ridge $88,688 to restore the pond to functionality. *See id.* at 47.

If one adds those figures, they total $220,874.25, the exact amount that the trial court awarded to Hidden Ridge for Scioto's breach of the Settlement Agreement. Hence, the trial court awarded $0.00 for future pond maintenance, because the award only compensated Hidden Ridge for Scioto's below-standard, incomplete construction; for repairing several years' worth of neglect to the stormwater-detention facility; and for the dye test Mr. Lennon used on the pipes. Thus, sufficient evidence of record, sustains the damage award under our scope and standard of review for an order enforcing a settlement agreement.

Furthermore, this basic math resolves the paradox that Scioto perceives regarding the stricken quitclaim deed. There is no paradox, because the damage award is not for future maintenance. By striking the quitclaim deed, the trial court placed all future-maintenance costs on Scioto, which perfectly aligns with the court's refusal to award future costs to Hidden Ridge.

Despite the foregoing evidence of record and established contract law, the Majority, in reversing the trial court's order, states that, "based upon the undeveloped record, and the trial court's summary opinion, we are unable to determine whether the court's factual findings are supported by competent evidence." Majority Opinion at 16. This is incorrect. As shown, competent evidence abounds in the voluminous, well-developed record that the parties and trial court assembled. The Majority inexplicably disregards the competent evidence that the trial court credited in 2018.

Moreover, this Court's October 1, 2019 Memorandum did not disturb the trial court's 2018 factual findings. If anything, the decision ratified them.

We found "adequate support in the record to enable the [trial] court to infer that Scioto failed to complete its work [on the stormwater-detention facility] in timely fashion." **Hidden Ridge**, **supra** at \*4 (citing N.T., 4/11/18, at 89, testimony of Scioto's supervisor David Dillon that Scioto did not complete the stormwater-detention facility until summer of 2015). Based on this factual finding and reasonable inference, which the trial court and this Court drew after the 2018 hearings, there is sufficient evidence in the record to prove conclusively that Scioto breached the Settlement Agreement.

Under Pennsylvania law, to succeed in its claim for breach of contract, Hidden Ridge "must demonstrate the following: (1) the existence of a contract between the plaintiff and defendant, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages resulting from a breach of that duty." **Reeves v. Middletown Athletic Assoc.**, 866 A.2d 1115, 1125 (Pa. Super. 2004).

There is no dispute that the parties had a contract – the September 21, 2012 Settlement Agreement. Thus, Hidden Ridge satisfies the first element, as a matter of law.

The second element is a breach. "When performance of a duty under a contract is due, any nonperformance is a breach." **True R.R. Assocs., L.P. v. Ames True Temper, Inc.**, 152 A.3d 324, 340 (Pa. Super. 2016) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 235(2))

Under the Settlement Agreement, Scioto assumed the duty to complete and to dedicate the stormwater-detention facility to South Park Township by December 31, 2014. **See** Settlement Agreement and Release at 5-6. Critically, the parties **agreed** that Scioto failed to perform its duty to complete and to dedicate the stormwater-detention facility by the end of 2014. **See** Scioto's Brief at 14; **see also** N.T., 7/25/18, at 154 (describing the February 17, 2015 order entered due to Scioto's December 31, 2014 breach as a "consent order").

On this record, Hidden Ridge has proven Scioto breached the Settlement Agreement at the end of 2014, as a matter of law. Reasonable minds cannot differ on this, because Scioto admitted to the breach at the February 17, 2015 hearing and in subsequent court filings. As such, the second element of breach is established beyond any doubt.

Finally, Hidden Ridge has also met the third element of damages.

"Consequential damages are generally understood to be other damages which naturally and proximately flow from the breach of contract." **Cresci Const. Servs., Inc. v. Martin**, 64 A.3d 254, 264 (Pa. Super. 2013). If "consequential damages are 'foreseeable' and were contemplated by 'the parties at the time they made the contract,' they will be awarded in order to put the victim of the contract breach in the same position as if there had been performance, not breach." **Condo. Assoc. Ct. of Old Swedes v. Stein-O'Brien**, 973 A.2d 475, 483 (Pa. Cmwlth. 2009) (quoting **Ferrer v. Trustees of the University of Pennsylvania**, 825 A.2d 591, 610 (Pa. 2002)).

Scioto's breach (*i.e.*, failing to complete and to dedicate the stormwater-detention facility to South Park by the end of 2014), forced Hidden Ridge to fix the pipes and the pond when Scioto refused to do so.  Otherwise, portions of Hidden Ridge's property would have continued to flood, and it would have faced potential erosion problems.

The need for Hidden Ridge to repair the stormwater-detention facility was a consequence of Scioto breaching the Settlement Agreement.  It was foreseeable that, if Scioto did not complete and dedicate the stormwater-detention facility to South Park by the end of 2014, the facility would fall into disrepair, because the township would not have assumed the maintenance obligations by dedication.  Consequently, someone else would have to make and to pay for that upkeep.  Because the costs of that upkeep fell to Hidden Ridge, it did not receive its expectation interest in the Settlement Agreement: *i.e.*, that someone other than Hidden Ridge would maintain and pay for the stormwater-detention facility.

Accordingly, on this record and in light of the trial court's 2018 factual findings, Hidden Ridge has established its claim for breach of contract against Scioto, as a matter of law.  Scioto's first appellate issue is meritless.

**B.    Scioto Waived Issue Two.**

For its second issue, Scioto claims the trial court "erred, as a matter of law, by entering judgment against it without holding a trial or [hearing] on (or addressing) Scioto's affirmative defenses."  Scioto's Brief at 40.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Trigg v. Children's Hosp. of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020).

The Pennsylvania Rules of Appellate Procedure require that each section of an appellant's argument "shall have . . . citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "Citation to authority in support of arguments is ***fundamental to effective advocacy.***" 20A WEST'S PA. PRACTICE, Appellate Practice § 2119:6 (emphasis added).

As the late Chief Justice Baer said, our "rules of appellate procedure are explicit that the argument within a brief must contain 'such discussion and citation of authorities as are deemed pertinent.'" ***Wirth v. Commonwealth***, 95 A.3d 822, 837 (Pa. 2014) (quoting Pa.R.A.P. 2119(a)). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority . . . that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him." ***Id.*** (some punctuation omitted).

Here, Scioto claims the trial court erred, as a matter of law, but it cites no rule, statute, or precedent to support that proposition. Scioto opens its argument by listing the defenses it asserted in the trial court. However, it never claims (much less establishes) why the trial court could not dispose of them, as a matter of law, on this record. ***See id.*** at 40.

It then provides a page-long quote from its trial-court filing, which also cites no law. ***See id.*** at 41. The block quote summarizes Scioto's revisionist

history of the procedural posture of this case. Scioto suggests that Hidden Ridge did not bring a breach-of-contract claim against it until filing the Amended Petition in 2019. *See id.* Scioto therefore argues that it did not have an opportunity to raise its defenses to breach of contract until 2019, thus, in its view, necessitating a trial or evidentiary hearing.

The only law in this section of Scioto's Brief appears in Note 17, where Scioto states that, under *Nanty-Glo v. American Surety Co.*, 163 A. 523 (Pa 1932), it could not seek judgment, as a matter of law, on one of its affirmative defenses. *See* Scioto's Brief at 42, n. 17. Even so, that does not mean the trial court could not *reject* Scioto's defenses, as a matter of law.

Clearly, Scioto has not met the requirements of Pa.R.A.P. 2116(a). And it has certainly not raised the due-process argument upon which the Majority reverses. *See* Majority Memorandum at 17.[4] Scioto has waived this issue.

Even if Scioto had not committed waiver, it still would not be entitled to relief. Critically, Scioto's recollection of the procedural posture is wrong. This especially true of Scioto's assertion that it had no opportunity to raise its defenses to breach of contract before 2019.

As mentioned above, Hidden Ridge petitioned for enforcement of the Settlement Agreement in *January of 2015*. That petition, by its very nature, asserted that Scioto breached the Settlement Agreement.

---

[4] I reincorporate my analysis from the above section, regarding why the due-process issue that the Majority *sus sponte* raises is waived. *See* Section III(A), *supra* at 20-22.

Scioto overlooks the simple fact that a settlement agreement is a contract. "There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum). ***Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 518 (Pa. Super. 2009). Thus, a settlement agreement is "enforced according to principles of contract law." ***Id.*** As a result, in filing a settlement-enforcement petition, a party is necessarily asserting that the other party breached the settlement agreement. Absent a breach, there is nothing to petition a court to enforce.

Furthermore, in Hidden Ridge's Amended Petition, it only changed its prayer for relief. Hidden Ridge swapped the equitable remedy of specific performance for the legal remedy of damages. Both are contractual remedies. ***See***, ***e.g.,*** John Murray, Jr., MURRAY ON CONTRACTS § 118 at 754 (5th ed. 2011). Thus, by seeking specific performance in 2015, Hidden Ridge necessarily raised this breach-of-contract claim in its petition. In addition, Scioto conceded to breaching the Settlement Agreement at the February 17, 2015 hearing. ***See*** Scioto's Brief at 14; ***see also*** N.T., 7/25/18, at 154 (describing the February 17, 2015 Order entered as a result of the December 31, 2014 breach as a "consent order").

Despite its February 2015 concession of breach, Scioto has the timidity to say it "did not anticipate the breach-of-contract claim at the time of the 2018 hearings." Scioto's Brief at 41. What does Scioto think prompted the 2018 contempt hearings, besides its breach of the Settlement Agreement? If

Scioto had not breached the Settlement Agreement at the end of 2014, then the trial court would not have entered the February 17, 2015 consent order. And, if the trial court had not entered the February 17, 2015 consent order, then there would have been no contempt hearings in 2018. Everything that transpired in this matter from January 2015 onwards was the direct result of Scioto's December 31, 2014 breach.

Scioto's procedural argument falls flat. It had every opportunity to challenge Hidden Ridge's claim of breach of contract at the February 17, 2015 hearing. Scioto could have raised all of its affirmative defenses then and there. It failed to do so. Instead, Scioto admitted to breaching the Settlement Agreement.

I would dismiss Scioto's second issue as waived and meritless.

**C.      Hidden Ridge Tolled the Statute of Limitations in 2015.**

Next, based on its misconception of the case's procedural history, Scioto argues that the statute of limitations for contract actions bars Hidden Ridge's Amended Petition. Because Hidden Ridge filed the Amended Petition more than four years after Scioto's breach, Scioto believes the Amended Petition is untimely.

"Issues involving the interpretation of a statute of limitations are questions of law for which our standard of review is *de novo*, and our scope of review is plenary." *Erie Ins. Exch. v. Bristol*, 174 A.3d 578, 585 (Pa. 2017).

Under Pennsylvania's statute of limitations, suit "must be commenced within four years" if it is an "action upon a contract . . . founded upon a writing . . . ." 42 Pa.C.S.A. § 5525(a)(8). Under the four-year statute, "a cause of action accrues when there is an existing right to sue forthwith on the breach of contract." ***Kowalski v. Traditions of America at Liberty Hills (Beaver) Condo. Assoc.***, 206 A.3d 1148, 1158 (Pa. Super. 2019) (quotation omitted).

The statute of limitations can serve as a legal defense against petitions to enforce settlement agreements. ***See***, ***e.g., Horowitz v. Horowitz***, 600 A.2d 982 (1991). Here, however, the statute does not apply.

Scioto breached the Settlement Agreement on December 31, 2014. Hidden Ridge filed it Petition to Enforce the Settlement Agreement in January of 2015, which, as explained in Section III(B), ***supra***, brought the present claim for breach of contract. Thus, Hidden Ridge's Petition to Enforce tolled the statute of limitations a month after the breach.

Hidden Ridge's filing of an Amended Petition is irrelevant, because it did not assert a new cause of action. Instead, Hidden Ridge substituted one remedy for breach of contract with another. ***See*** Murray, ***supra*** at 754. In fact, "Leave to amend a complaint [or petition] is to be liberally granted." ***Pollock v. NFL***, 171 A.3d 773, 783 (Pa. Super. 2017). Amendment is barred only if it raises "a new cause of action where the statute of limitations has expired" or it joins a new party. ***Id.***

Here, Hidden Ridge reasserted the same cause of action (Scioto's 2014 nonperformance of the Settlement agreement), based on the same legal

theory (breach of contract), between the same parties. Thus, the trial court rightly permitted Hidden Ridge to amend its petition and thereby shift from one contractual remedy to another.[5]

Scioto's statute-of-limitations defense fails, as a matter of law.

**D.   Scioto Waived Issues Four and Five.**

Scioto's next two issues challenge the trial court's factual findings that the stormwater-detention facility includes the pipes leading to the pond and its calculations of the damage awarded. However, its arguments for both issues contain no rule, statute, or other legal citations. ***See*** Scioto's Brief at 44-51. Thus, based on Pa.R.A.P. 2116(a) and ***Wirth***, ***supra***, Scioto waived its fourth and fifth issues.

**E.   Absence of a Township-Acceptance Term Is No Defense.**

As its sixth and final issue, Scioto argues the trial court erred, as a matter of law, by "entering judgment against [it] for breach of contract based on contract language that is unambiguous or, alternatively, is ambiguous but without hearing evidence bearing on the parties' intent." Scioto's Brief at 52 (capitalization omitted). More precisely, Scioto suggests the trial court held it in breach, because Scioto failed to convince South Park Township to accept the stormwater-detention facility. "Scioto submits that the Settlement Agreement itself includes no term requiring Township acceptance." ***Id.***

---

[5] Scioto makes no claim that the declaratory relief striking the quitclaim deed was subject to a statute of limitations. Thus, it has waived this issue.

Scioto bases this argument upon a false premise: that it breached the Settlement Agreement by not getting the township **to accept** dedication of the pond. As demonstrated throughout my Dissent, the breach was Scioto's failure **to complete** the stormwater-detention facility **and to dedicate** it to South Park by December 31, 2014. Nevertheless, Scioto admits it was "required to 'dedicate' the [facility]" and it, in fact, "did not actually dedicate the property . . . ." Scioto's Brief at 52. This is yet another admission of breach by Scioto. Again, "When performance of a duty under a contract is due, **any nonperformance** is a breach." **True R.R. Assocs., L.P.**, 152 A.3d at 340 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 235(2)) (emphasis added).

In addition, Code Enforcement Officer Wargo testified that, despite the no-dedication ordinance, the township can and does make exceptions to its ordinances. Counsel asked him, "In your experience, developers do ask for exceptions of the Supervisors or Planning Commission of certain requirements?" N.T., 4/11/18, at 55.

He replied, "Yes." **Id.**

"And that happens all the time, correct?" **Id.**

"Yes." **Id.**

Mr. Wargo reported that Scioto "never even asked for an exception." **Id.** Thus, Scioto made no attempt to perform its dedication obligation under the Settlement Agreement. Scioto has clearly breached, notwithstanding the absences of a township-acceptance requirement in the contract.

Additionally, Scioto claims winning a dedication exception for the stormwater-detention facility would be impossible and, therefore, legally impracticable. Thus, it offers an affirmative defense to its breach.

Mr. Wargo's testimony undermines this defense. The supervisors are empowered to repeal the 1999 ordinance, or they could grant Scioto an exception, if Scioto could persuade them. But, even disregarding these factual difficulties with Scioto's impartibility defense, the theory is legally unavailable.

"Where, at the time a contract is made, a party's principal purpose is substantially frustrated without his fault by a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty of that party to render performance arises, unless the language or circumstances indicate the contrary." RESTATEMENT (SECOND) OF CONTRACTS § 266(2). In other words, "a party asserting existing impracticability must have had **no reason to know** the fact causing impracticability at the time of contract formation." Murray, **supra**. § 113[E] at 720 (emphasis in original). "For example, where the parties contract to purchase and sell . . . a used automobile which, at the time of formation without the knowledge or fault of either party, has been destroyed, no duty arises under the contract." **Id.** at 721.

Here, the township passed the no-dedication ordinance in 1999, and the parties formed the Settlement Agreement in 2012. Thus, Scioto asserts an existing impracticability, because the ordinance existed when the parties formed their contract.

Ten years prior to the Settlement Agreement, Scioto signed a Land Development Agreement with South Park, wherein it "acknowledge[d] and understood that it was the intent of the township not to accept the dedication of the stormwater-detention system" at the Hidden Ridge development. N.T., 7/25/18, at 152. Thus, when Scioto entered the Settlement Agreement with Hidden Ridge, it had "reason to know" of the no-dedication ordinance. RESTATEMENT (SECOND) OF CONTRACTS § 266(2).

Because Scioto knew or should have known of the no-dedication ordinance when it entered the Settlement Agreement, its impracticality defense fails, as a matter of law. Scioto had notice of the risk that the ordinance might make Scioto's duty impractical or impossible. Thus, the law presumes that Scioto voluntarily assumed the risk of nonperformance.

## IV. Conclusion

In sum, the evidence of record (including Scioto's repeated admissions of contractual liablity) proves Scioto breached the Settlement Agreement on December 31, 2014. If one limits the scope of review to the arguments that Scioto raised and properly briefed, no appellate relief is due. My review of the copious record and law of contracts convinces me that this Court should affirm the judgment in favor of Hidden Ridge. The trial court did a yeoman's job on this case and made every effort to resolve it as wisely, justly, and expediently as possible. Thus, I respectfully dissent.