J-S38031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN CARDULLO & SONS, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THOMAS CAVELLA AND ALLSTATE | : | |
| FUEL OIL, LLC | : | |
| | : | No. 3138 EDA 2023 |
| | : | |
| APPEAL OF: THOMAS CAVELLA | : | |

Appeal from the Judgment Entered January 8, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2018-001257

BEFORE:   STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 26, 2024**

Thomas Cavella ("Appellant") appeals the judgment entered by the Court of Common Pleas of Delaware County following a non-jury trial in this action filed by Appellee John Cardullo & Sons, Inc. ("Cardullo").  The trial court found in favor of Cardullo on both Cardullo's breach of contract claim and Appellant's counterclaim for breach of contract.  We affirm.

On September 15, 2016, Appellant entered into an Asset Purchase Agreement to sell his home heating oil delivery business, Oil Depot, Inc. to Cardullo for $131,000.  Notes of Testimony (N.T.), 4/19/23, at 31.  As a condition to the Purchase Agreement, the parties also entered a Consulting and Non-Competition Agreement to "ensure the elimination of competition

_____

[*] Former Justice specially assigned to the Superior Court.

from [Appellant] and for providing assistance in maintaining the business that was purchased." Consulting and Non-Competition Agreement, at 2. This agreement required Appellant to (1) submit to a non-competition provision period of seven years and (2) advise and assist Cardullo in running the business for two years. In exchange, Cardullo paid Appellant $75,000 ($37,500 for the non-competition provision and $37,500 for consulting) and agreed to pay Appellant deferred compensation for a two-year period from September 15, 2016 through September 15, 2018 at a rate of $0.20 per gallon delivered to Oil Depot customers. The Consulting and Non-Competition Agreement provided that Cardullo would pay the deferred compensation on a yearly basis, on September 15, 2017 and September 15, 2018, respectively.

On February 18, 2018, Cardullo filed a complaint, alleging that Appellant had violated the parties' non-competition agreement by working for Cardullo's competitor, Allstate Fuel Oil, LLC ("Allstate"). On February 27, 2018, Cardullo filed a request for a preliminary injunction to enjoin Appellant from taking any further action in violation of the parties' agreement.

On March 2, 2018, the Honorable Chad F. Kenney entered an order prohibiting Appellant from driving an oil delivery vehicle or working for an oil delivery company in violation of the parties' non-competition agreement. On May 11, 2018, the trial court entered a stipulated order which again provided that during the litigation, Appellant was not permitted to drive an oil delivery truck or work for an oil delivery company and further was prohibited from disparaging Cardullo.

Cardullo filed an amended complaint on March 3, 2018, and a second amended complaint on April 17, 2018, which included claims of breach of contract and conversion against Appellant as well as a claim for Tortious Interference with Contractual Relations against Allstate.[1]  In response, Appellant filed a counterclaim alleging that Cardullo had breached the Consulting and Noncompetition Agreement by failing to employ him as a delivery truck driver and this material breach excused him from further performance under the contract.[2]  Appellant also asserted that he was still owed compensation for consulting fees under this agreement.

The parties proceeded to a bench trial which was held on April 19-20, 2023.  Cardullo presented the testimony of its manager, Carl Forcillo, who signed both the Asset Purchase Agreement and the Consulting and Non-Competition Agreement, as well as Michael Steiner, president of Service Energy, Cardullo's parent company.  Notes of Testimony (N.T.), 4/19/23, at 21-23, 83-84.

---

[1] Cardullo eventually withdrew the conversion count against Appellant and the claim of Tortious Interference with Contractual Relations against Allstate.
[2] Appellant subsequently filed a separate action against Cardullo and its personnel, Service Energy, LLC (Cardullo's parent company) and HR Phillips (docketed at CV-2019-004082) raising claims of Voidable Transfer, Unjust Enrichment, Employee Retaliation, Successful Liability by De Facto Merger, Pierce of Corporate Veil, Civil Conspiracy, and Abuse of Process.  On March 13, 2020, the two cases were consolidated.  On September 20, 2022, the parties stipulated to the dismiss of the claims of Voidable Transfer, Unjust Enrichment, Employee Retaliation, Successful Liability by De Facto Merger, Pierce of Corporate Veil, Civil Conspiracy, and Abuse of Process.  On September 27, 2022, the trial court granted summary judgment against Appellant on his claims of Civil Conspiracy and Abuse of Process.

Forcillo explained that the non-competition agreement was necessary because Cardullo was spending "a lot of money for [Appellant's] clients and customers so we didn't want [Appellant] to just go back out and get in a truck and take the business back." *Id.* at 26. Steiner, who had drafted the Consulting and Noncompetition Agreement, echoed these sentiments and indicated that the purchase of Appellant's business included his customer lists, contacts, and reputation. *Id*. at 87. As such, Steiner indicated that Cardullo's purpose in having Appellant sign the Consulting and Non-Competition Agreement was for Appellant to assist with any questions Cardullo would have regarding the business, but more importantly, to restrict Appellant from competing against Cardullo and taking back its customers. *Id*.

Although the Consulting and Non-Competition Agreement provided that Appellant's deferred compensation would be paid out on a yearly basis, Forcillo admitted that Appellant was paid quarterly in the first year as "things were going well, we were getting along." *Id.* at 28. Thus, in addition to the $131,000 payment under the Asset Purchase Agreement and the $75,000 combined payment for the consulting and non-competition agreement, Appellant was paid quarterly deferred compensation payments in 2017 which totaled $136,595.92.

Cardullo was also willing to employ Appellant periodically as an oil truck driver at a rate of $30/hour when he wished to work as Appellant had extensive experience and Cardullo was always in need of good drivers. *Id.* at 34, 87. Both Forcillo and Steiner denied that the non-competition agreement

contained any provision that guaranteed Appellant employment with Cardullo and indicated that they would not guarantee employment to any individual. *Id*. at 24.

As such, after the parties signed the Consulting and Non-Competition Agreement, Appellant drove an oil truck for Cardullo for a few weeks before he decided to relocate and use the money from the sale of Oil Depot to invest in new business ventures, including a mobile cryogenic machine, a health spa in Rehoboth Beach, Delaware, and a restaurant in Cape May, New Jersey. *Id*. at 38. From November 2016 to October 2017, Appellant did not ask for any opportunities to drive an oil truck for Cardullo; Forcillo believed that Appellant "left the oil business for good and was doing his own businesses." *Id*. at 38.

Forcillo asserted that although the parties worked together amicably in the first year, the business relationship became strained in the second year of the contract. *Id.* at 95. The parties do not dispute that Appellant's business ventures failed and Appellant spent the entire $344,000 that he had been paid by Cardullo. N.T. 4/20/23, at 137-38.

When Appellant returned to the area in November 2017, he sent Forcillo a series of emails demanding that Cardullo fire its office employee, Rebecca McNeal, who was Appellant's former girlfriend. N.T. 4/19/23, at 42-44. In the first email, Appellant told Forcillo "within 24 hours you need to buy Oil Depot outright or get rid of the cancer, Becky." *Id*. at 44. Appellant also threatened "[g]et rid of Becky and we can continue on, or we can fight it out in court, and in the street. I will be back in a truck." *Id*. In the second email, Appellant

told Forcillo, "Becky goes ASAP or pay me out fully, or I start taking Oil Depot back procedure." *Id.* at 45.

Forcillo did not fire Ms. McNeal or respond to any of Appellant's emails. *Id.* at 45-46. After Forcillo shared Appellant's emails with Ms. McNeal, she filed for a restraining order against Appellant. Appellant sent Forcillo a third email, expressing anger that his emails were shared with Ms. McNeal and indicating that he was "going in a truck, possibly tomorrow" because of Forcillo's "actions handling this gross, disgusting matter," referring to Forcillo's refusal to fire Ms. McNeal. *Id.* at 46.

Shortly thereafter, Forcillo learned that Appellant was in fact driving an oil delivery truck in violation of the parties' noncompetition agreement. *Id.* at 48. As such, Cardullo hired private investigators who surveilled Appellant making numerous oil deliveries for Cardullo's competitor, Allstate, in Delaware County on January 25, 2018, January 30, 2018, and February 2, 2018. *Id.* at 48-49; Cardullo Exhibit 8. Forcillo also discovered that Appellant had created social media posts, attacking Cardullo and accusing it of selling customers bad oil. *Id.* at 90-92, 154. Cardullo presented evidence of a Facebook Live video in which Appellant can been seen eating a check made out to Cardullo. *Id.* at 54-57.

Although Cardullo had paid in full Appellant's consulting fees in 2017, Cardullo stopped making the quarterly payments of deferred compensation to Appellant after he sent the aforementioned emails and was suspected of working for Cardullo's competitor. *Id*. at 79. Steiner indicated that the

quarterly payments had been made to Appellant in good faith in the first year when the parties were cooperating, but after Appellant conducted himself in this manner, Steiner indicated that the "were so many reasons not to extend the good faith." *Id.* at 151.

Appellant testified on his own behalf, admitting that he had signed a contract agreeing to be a consultant to Cardullo, but accused Cardullo of altering the contract that Appellant had signed by deleting the portion of the contract that guaranteed Appellant employment as a truck driver for $30/hour for two years. *Id.* at 231-32. Appellant denied that he signed the contract which Cardullo presented at trial as it did not contain the alleged employment provision. *Id.* at 230.

Appellant admitted that he drove an oil delivery truck for Allstate in violation of his noncompetition agreement as early as December 13, 2017 and continued to drive for Allstate until he was prohibited to do so by the court order entered on March 2, 2018. *Id.* at 257; N.T. 4/20/23, at 114. Appellant admitted that he delivered 125,000 gallons of oil for Allstate to multiple individuals, including former Oil Depot customers. N.T. 4/19/23, at 260; N.T. 4/20/23, at 114.

Appellant believed that Cardullo breached the parties' contract when it stopped providing Appellant quarterly payments in the second year of the contract. N.T. 4/20/23, at 121. Appellant asserted that Cardullo breached the parties' contract first, which excused his later by violating his non-

competition agreement. In his counterclaim against Cardullo, Appellant claimed that he was owed over $768,727.18 in damages.

However, Appellant admitted that the parties' contract provided that the consulting fees would be paid on a yearly basis and Appellant conceded that he did not give Forcillo anything in exchange for an oral modification of the contract to require quarterly payments. N.T. 4/19/23, at 239; N.T. 4/20/23, at 143-44.

After trial, the trial court permitted the parties to submit briefs and proposed findings of fact. On November 3, 2023, the trial court issued an order and opinion finding in favor of Cardullo on its breach of contract claim and awarded Cardullo $30,000.00 in reasonable attorney's fees, but did not award any further damages. The trial court found in favor of Cardullo on Appellant's counterclaim for breach of contract.

On November 13, 2023, Appellant filed post-trial motions, which the trial court subsequently denied on December 11, 2023. On December 13, 2023, Appellant filed the instant appeal, purporting to appeal from the trial court's order denying his post-trial motions when a final judgment had not been entered on the docket.

On January 8, 2024, this Court entered an order directing Appellant to praecipe the trial court to enter judgment on the decision of the trial court. The entry of an appropriate judgment is a prerequisite to this Court's exercise of jurisdiction. *Johnston the Florist, Inc. v. TEDCO Const. Co.*, 657 A.2d 511, 514 (Pa.Super. 1995) (*en banc*). "[J]urisdiction in appellate courts may

be perfected after an appeal notice has been filed upon the docketing of a final judgment." *Id.* at 513.

Appellants complied with this Court's order and provided this Court with a certified copy of the trial court docket reflecting that judgment had been entered on January 8, 2024. We may proceed to review the merits of the instant appeal.

Appellant raises the following issues for our review on appeal:

A. Did the lower court abuse its discretion or commit error of law [sic] by ruling against [Appellant] regarding [Appellee's] Count I – Breach of Contract claim against [Appellant]?

B. Did the lower court abuse its discretion or commit error of law [sic] by ruling against [Appellant] regarding [Appellant's] Breach of Contract counterclaim against [Appellee]?

Appellant's Brief, at 29.

In reviewing a non-jury verdict, our standard of review is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial court must be given the same weight and effect on appeal as the verdict of a jury. We consider evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 958 (Pa.Super. 2021) (brackets and citation omitted).

- 9 -

We further emphasize that:

> the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder.

*O.H. Bel Air Partners LP v. Hinton*, 296 A.3d 1173, 1175 (Pa.Super. 2023)

(quoting *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa. Super.

2017)).

Appellant offers related and jumbled arguments for both of his claims in his appellate brief. However, we are able to discern the arguments that he wishes to set forth on appeal.

In challenging the trial court's ruling in favor of Cardullo on its breach of contract claim, Appellant asserts that the lower court did not explain why it found Appellant in breach of contract. However, the trial court specifically found that it was "undeniable" that Appellant had breached the Consulting and Non-Competition Agreement by admittedly driving an oil delivery truck for Cardullo's competitor, Allstate. Trial Court Opinion, 3/15/24, at 10. The trial court also found that Carl Forcillo credibly testified that Appellant had made disparaging comments about Cardullo in accusing them of delivering bad oil.

Although Appellant concedes that he worked for Cardullo's competitor in violation of his non-compete covenant, Appellant attempts to excuse this breach of the parties' contract by arguing that Cardullo breached the parties' contract first by failing to employ him as an oil delivery truck driver at a rate

of $30/hour. Appellant also argues that Cardullo failed to adequately compensate him in consulting fees in the first year of the contract when it did not include all the Oil Depot customers in the calculation of his deferred compensation. Appellant also argues that he was not paid consulting fees for the second year of the contract. Appellant claims Cardullo's failure to provide him with employment and adequately calculate his deferred compensation should have been characterized as a material breaches of the contract, which in turn relieved Appellant of his obligation to comply with his non-competition restriction and the contract in general.

In reviewing the parties' contract, we recognize that:

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Sunoco (R&M), LLC v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 322 A.3d 930, 940 (Pa.Super. 2024) (citation omitted).

We recognize that "[e]very contract imposes a duty of good faith and fair dealing on the parties in the performance and the enforcement of the contract." *J.J. DeLuca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 412 (Pa.Super. 2012) (quoting *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.,* 959 A.2d 438, 447–48 (Pa.Super. 2008)).

Our courts have "long recognized the established precept of contract law that a material breach of a contract relieves the non-breaching party from any continuing duty of performance thereunder." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 560, 962 A.2d 639, 648 (2009) (citing *Berkowitz v. Mayflower Securities*, 455 Pa. 531, 534–535, 317 A.2d 584, 586 (1974) (citing 6 Williston, *A Treatise on The Law of Contracts,* § 8[64] (3d.ed. 1962)). In the same manner, "[a] party also may not insist upon performance of the contract when he himself is guilty of a material breach of the contract." *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1270 (Pa.Super. 2012) (quoting *LJL Transport, Inc.*, 599 Pa. at 560, 962 A.2d at 648). When "a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract." *True R.R. Assocs., L.P. v. Ames True Temper, Inc.*, 152 A.3d 324, 340 (Pa.Super. 2016) (citation omitted).

In evaluating whether a breach is "material," our courts have analyzed the relevant circumstances pursuant to the Restatement (Second) of Contracts § 241 (1981), which sets forth the following factors to guide the inquiry:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
>
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Int'l Diamond Importers, Ltd.*, 40 A.3d at 1271.

We first evaluate Appellant's claim that Cardullo failed to abide by a provision in the Consulting and Non-Competition Agreement that guaranteed Appellant employment as an oil truck delivery driver at a rate of $30/hour. Appellant accused Cardullo of deleting that provision from the contract after he signed it and presenting a fraudulent version of the contract at trial.

The trial court found Appellant's testimony was not credible and noted that Appellant was unable to present a writing memorializing the purported agreement to guarantee Appellant employment as an oil truck delivery driver during the contractual period. In contrast, the trial court found that Forcillo and Steiner credibly testified that Appellant was never guaranteed employment as an oil delivery truck driver in any of the parties' contact. Forcillo and Steiner denied that they would ever make such a promise to any employee. We will not disturb the credibility findings of the trial court, who was free to believe all, part, or none of the evidence. *See O.H. Bel Air Partners LP*, 296 A.3d at 1175.

Appellant also contends that he was excused from complying with his non-competition agreement as Cardullo failed to pay Appellant for all the sums he was owed under the parties' contract, including consulting fees for the

second year of the contracting period and the inclusion of the Gold Medal account in the calculation of all the consulting fees.

Appellant suggests that Cardullo committed a material breach of the parties' contract when it chose not to pay Appellant *quarterly* consulting fees in the second year of the parties' contract. However, we agree with Cardullo that there was no provision in the Consulting and Non-Competition Agreement that required Cardullo to provide Appellant quarterly payments for his consulting fees. As noted above, the contract only required that Appellant be given a yearly payment at the conclusion of each consulting year, on September 15, 2017 and September 15, 2018, respectively.

Our review of the record shows that despite this contractual provision requiring one payment at the completion of Appellant's first year of consulting, Competition Agreement, Cardullo chose to extend Appellant good faith and paid Appellant quarterly payments during the first year as the parties' arrangement "was going well." Thus, as of September 17, 2017, Cardullo had paid Appellant's consulting fees in full. Appellant did not contest the amount of consulting fees paid in the first year of the contractual period.

To the extent that Appellant argues that there was a subsequent oral modification of the parties' agreement that would have required Cardullo to make quarterly payments of Appellant's consulting fees, Appellant admitted at trial that he did not provide any consideration to support such an amendment to the parties' contract that would be binding on Cardullo. As such, there is no support for Appellant's claim that Cardullo was liable for

breach of contract when it declined to make quarterly consulting fee payments to Appellant in the second year of the contract.

The record shows that Cardullo's personnel declined to continue the quarterly consulting payments after Appellant sent menacing emails demanding that Cardullo fire his former girlfriend and Appellant threatened to work for a competitor if his demands were not met. Cardullo refused to pay Appellant any further consulting fees after obtaining proof that Appellant had in fact been delivering oil for its competitor.

Appellant does not challenge Cardullo's argument, which it made repeatedly prior to, during, and after trial, that Appellant's conduct in working for Cardullo's competitor constituted a material breach of the parties' contract that excused Cardullo from further performance of the entire contract, i.e., payment of consulting fees to Appellant for the second year of the agreement.

With respect to Appellant's claim that Cardullo underreported his consulting fees by failing to include oil deliveries to the Gold Medal account, Cardullo's personnel contended that Appellant was not entitled to be paid for deliveries to Gold Medal, who was Cardullo's customer before the parties signed the relevant contracts in September 2016. We reiterate that the trial court, as factfinder, was free to accept their testimony as credible.

Therefore, we conclude that the trial court correctly determined that Appellant had not been excused from his contractual duty not to compete with Cardullo under the Consulting and Non-Competition Agreement when he delivered oil on behalf of Cardullo's competitor in breach of this agreement.

In the alternative, Appellant argues that even if he was found to have breached the parties' contract, Appellant asserts that there is no proof that his conduct caused damages to Cardullo. Appellant contends that Cardullo failed to show that Appellant in any way diverted customers from Cardullo or that Cardullo suffered any financial loss during the second contract year. Appellant contends that Cardullo failed to produce the testimony of any Oil Depot customers to corroborate Cardullo's allegations and did not identify the actual adverse statements which Appellant was alleged to have made to Oil Depot customers. Thus, Appellant argues that any damages flowing from his alleged breach of the parties' contract were completely speculative.

As noted above, the trial court only awarded Cardullo $30,000 in attorney's fees for his breach of the non-competition provision and agreed with Appellant that Cardullo was not entitled to further damages as Cardullo had failed to meet its burden to prove its alleged losses during the contract period with reasonable certainty.

The trial court explained that it awarded Cardullo attorney's fees under the express language of the parties' contract which provided that:

> For any violation of this Agreement, in addition to any other rights and remedies Cardullo may have at law or in equity including, without limitation, the recovery of damages, Cardullo may obtain a restraining order or an injunction or both in order to restrain violation of the terms and conditions set forth herein. In the event of any breach by [Appellant] of this Agreement, [Appellant] shall pay all costs incurred by Cardullo in connection with said breach and/or the enforcement of this Agreement, *including reasonable attorney's fees* and costs.

Consulting and Non-Competition Agreement, at 2-3, ¶ 9 (emphasis added). Accordingly, we conclude that the trial court properly awarded Cardullo attorney's fees in this case.

Further, Appellant argues that the trial court erred in denying his counterclaim for breach of contract by reiterating the same claims that 1) Cardullo breached its contract to employ Appellant as an oil truck driver at a rate of $30/hour during the consulting period, 2) Cardullo underreported his consulting fees by failing to include Gold Medal as a former Oil Depot consumer, and 3) Cardullo's personnel gave testimony that should not have been believed.

We conclude that the trial court properly rejected Appellant's claims that Cardullo had breached the parties' contract for the reasons set forth above. We also decline to accept Appellant's invitation to overturn the credibility findings of the trial court as factfinder, which we will not do.

For the foregoing reasons, we affirm the judgment in favor of Cardullo.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/26/2024